# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
*Civil Division*

| | | |
|---|---|---|
| JOAN CLARK | ) | |
| | ) | |
| | ) | |
| v. | ) | **CA NO. 1:07-cv-00883** |
| | ) | **Judge Richard J. Leon** |
| JOHN DOE, et al. | ) | |

------------------------------------------------------

## PLAINTIFF'S RESPONSE TO NON-PARTY METROPOLITAN POLICE DEPARTMENT'S OBJECTION TO ORDER OF MAGISTRATE JUDGE

Plaintiff Joan Clark, by and through her attorney, and pursuant to Federal Rules of Civil Procedure Rule 72 and District Court for the District of Columbia Local Rule 72.2 respectfully submits the following response to Non-party Metropolitan Police Department's ("MPD") Objection to Order of Magistrate Judge:

## I.    INTRODUCTION

There was no error, let alone clear error, in Magistrate Judge Robinson's Order dated April 17, 2008.  MPD continues to obstruct discovery and is using this pleading as yet another delay tactic in its effort to avoid compliance with Plaintiff's Rule 30(b)(6) deposition request. Plaintiff has been attempting to elicit discovery from the MPD since before this case was filed. Despite repeated orders from the Court to provide a competent 30(b)(6) deponent, MPD has refused to do so.

Although MPD attempts to mislead the Court by stating that it has no jurisdiction and MPD produced two competent designees, the record and the law clearly show this not the case. Equally misplaced is any reliance on a February 27, 2008 ruling by Magistrate Robinson as precluding the Court from imposing additional sanctions based upon an oral motion by Plaintiff's counsel at the April 17, 2008 hearing.

II.    **FACTS**

A.    **Pre Suit**

On May 13, 2005, Plaintiff was a passenger in a vehicle traveling along Southern Avenue S.E., in the District of Columbia. Suddenly a stolen car, with Virginia tags, crashed into the vehicle in which Plaintiff was riding. The occupants of the stolen car fled the scene. They have never been identified. Plaintiff was severely injured. She suffered a severed aorta, fractured left elbow, right leg, left hip and left eye socket. She was in the hospital for three months. She has been unable to walk since the accident and is still receiving medical treatment for her injuries.

In 2005, Plaintiff's counsel reviewed the accident report and conducted an investigation regarding the stolen car. Counsel spoke to police officials and sent a letter requesting information regarding the theft of the car and the accident. Counsel never received a response. Counsel filed a Freedom of Information Act Request on April 30, 2007, seeking information about the circumstances of the theft and the accident. Plaintiff did not receive a response to her inquiry.[1]

B.    **Law Suit**

Plaintiff filed her complaint on May 10, 2007. The Defendants had been identified in her initial investigation. Plaintiff needed information that only MPD had, so she served the police department with a subpoena *duces tecum*, pursuant to F.R.Civ. Pr. 30(b)(6) on June 25, 2007, setting a June 29, 2007 date for deposition.[2]

Plaintiff's subpoena directed MPD to produce all records and information concerning the theft of the vehicle and the circumstances of the accident. The subpoena also directed MPD to

---

[1] Plaintiff received a reply on September 11, 2007; however it was not responsive to her requests.
[2] Defendants provided information which cast doubt on their involvement in this case. It was imperative that Plaintiff obtain information from the police department so that these matters could be resolved as soon as possible.

designate a person who could explain the documents and explain the circumstances of the theft and the accident.

Plaintiff received no response to her subpoena so she contacted the Office of General Counsel for the police department on June 27, 2007.  MPD had not planned to attend the deposition on June 29, 2007, had not produced any documents and had not contacted Plaintiff's counsel.  After a discussion, it was agreed that the Office of General Counsel would call Plaintiff and comply with the subpoena

Plaintiff made approximately 34 phone calls to the general counsel's office from June 27, 2007 until August 2007.  The general counsel's office made some documents available in July 2007.  Depositions were scheduled on several occasions and canceled.  Plaintiff reviewed the documents and found them not to be responsive to the subpoena.  Plaintiff sent a letter to the police department about the "incomplete" response.

On or about August 23, 2007, Plaintiff was contacted by the Attorney General's office of the District of Columbia.  Plaintiff was informed that a new deposition date would be set in the Attorney General's Office.  The first date was scheduled on August 24, 2007.  It was cancelled and rescheduled for August 28, 2007.

Officer Lavern Battle, the officer who prepared the accident report, was designated to testify in response to the subpoena's requests.  Officer Battle's testimony about recorded tapes concerning the events leading up to the accident showed that one of the tapes had not been produced.  She did not have sufficient knowledge or information to address the subpoena's requests.  In response to basic questions, Officer Battle testified as follows:

She did not know how the car was stolen.

(Battle depo., p. 46, ll 15-20; p. 47, ll 1-8)

Q: Officer Battle, based upon your presence at the accident scene and based upon your review of the records you've testified before, can you tell me how this Jaguar was stolen?

A: I don't know exactly how the Jaguar was stolen, but according to this Event Chronology Report it states that the ORI, which is the originating agency in reference to the stolen vehicle, is Manassas Police Department.  They have it listed as stolen on 4/27 of 2005 from Manassas,Virginia.

She could not provide information about the facts leading up to the

accident.

(*Id.* at p. 21, ll 3-22; p. 22, ll 1-3)

Q: I understand.  When we go down to the narrative, it states that "On May 13th at approximately 1355 hours the Jaguar, D1, was traveling eastbound in the 800 block of Southern Avenue at a high rate of speed, crossed over double yellow lines striking D2, Ms. Clark's vehicle, causing it to spin out of control.  D1, the Jaguar, also spun out of control before coming to a complete stop, at 12   which time D1 and the passenger jumped out of the vehicle and fled the scene in a wooded area of the 800 block of Southern Avenue, Southeast."  Did you actually observe this?

A: No.

Q: How did you get this information?

A: Once I got to the scene -- I can't recall right off the top of my head exactly who I spoke with.  I know some of the   information came from the dispatcher as far as the suspect information, the driver.  As I say, this accident has been some time ago and I've had several accidents since then, so I can't –

(*Id.* at p. 48, ll 10-18; p. 49, ll 1-9)

Q: Now the Event Chronology indicated that a cruiser was following this vehicle before it crashed.  Do you have any information about what caused these officers to start following this vehicle, what went on when they were following this vehicle, and what went on before this vehicle hit the car in which Ms. Clark was riding?

A: I can only elaborate on the Event Chronology record which states that the Cruiser 8632 was behind the stolen   vehicle; the vehicle refused to stop.  And I'm not certain if the vehicle eluded 8632 -- Cruiser 8632 because it doesn't state here, but it does state that the vehicle was involved in a motor vehicle accident and it gives the location of Southern Avenue and Chesapeake Street, Southeast.

She could not fully explain the documents the police department produced

in response to the subpoena

> (*Id.* at p. 34, ll 4-8)
> Q: Okay. And then I come down under that it has complainant or
> decedent, David Slack. Where does that information come from?
> A: That information I wouldn't have because I didn't prepare this
> report.
>
> (*Id.* at p. 34, ll 15-20)
> Q: Then we come down, it says "To commanding officer OSD."
> What does OSD mean?
> A: It's a specialized unit. I assume that it's a part of the Forensic
> Science Division. It doesn't say here exactly what it stands for and
> I don't work for that unit so I wouldn't be able to tell you.
>
> (*Id.* at p. 36, ll 3-11)
> Q: So, it would be safe to assume that some detective has worked
> on this case?
> A: That information I wouldn't be able to elaborate on because it
> doesn't state in this identification Report. It just said it was
> assigned to a detective, but, because it doesn't give a name of a
> detective, I'm not aware who would have done the follow-up or
> who it would have been forwarded to.
>
> (*Id.* at p. 47, ll 20-22 – p. 48, ll 1-7)
> Q: And also I showed you the Evidence Technician report which
> indicated a subject, Eric Jerome Brown. Do you have any
> knowledge as to what is going on with that?
> A: No. I don't have any knowledge of it, but it does say that a
> subject was identified according to the latent prints. Now what his
> status is as of today's date, I wouldn't have that information.

At the end of the deposition Plaintiff's counsel stated that the police department did not

provide the information requested in the subpoena. Counsel for the police department took the

position that the department had complied. On September 7, 2007, plaintiff's counsel wrote to

the Office of the Attorney General for the District of Columbia in an attempt to resolve the

outstanding issues regarding the subpoena. After it became obvious that MPD was not planning

on complying with Plaintiff's subpoena, Plaintiff filed a Motion to Compel and for Contempt

and Sanctions on October 1, 2007.   The Magistrate Judge held the first of what would turn into three hearings on this matter on December 11, 2007.  At that hearing, the parties agreed to attempt to reach a mutual agreement on a supplemental deposition.  When it became apparent to Plaintiff that MPD was not going to comply with that request, another hearing in front of Magistrate Judge Robinson was held on February 27, 2008. At that hearing, the Court granted Plaintiff's motion requiring MPD to produce a competent Rule 30(b)(6) deponent by March 12, 2007. On March 6, 2008, counsel for MPD sent a letter to Plaintiff's counsel requesting dates for the deposition. Plaintiff's counsel responded via e-mail on March 7, 2008 and proposed three dates for the deposition.  Plaintiff's counsel did not receive a response until March 11, 2008. That response indicated that "the dates you suggested this week, unfortunately will not work for us." Thereafter, a deposition was set for April 15, 2008.  During this time, the Court had set a Status Conference for April 2, 2008.  Plaintiff's counsel was present for that hearing, but representatives for MPD failed to attend. (See Court Docket Entry, April 2, 2008, "Minute Entry for proceedings held before Magistrate Judge Deborah A. Robinson: Case called for Status Conference but not held on 4/2/2008, Counsel representing U.S. Police department not present.").

On April 15, 2008, MPD provided an MPD Auto Theft Officer, Officer Kevin Rachlin, who was alleged to have information about the theft and circumstances of the accident.  The information elicited during that deposition clearly shows that Officer Rachlin, like Officer Battle, was not a competent Rule 30(b)(6) witness.

Officer Rachlin had no knowledge of which officers were in which vehicles during the pursuit of the stolen vehicle:

> (Rachlin depo., p. 28, ll 14-17)
> Q: Who was the officer in Cruiser 8632?
> A: I don't know at this time but we can find out, I am sure.
>
> (*Id.* at p. 32, ll 11-14)
> Q: Can you please identify, again, who was in Cruiser 8632?
> A: If I couldn't do it five minutes ago, I can't do it now.

Officer Rachlin had no knowledge of the officers responding to the scene (information that would be within the MPD's corporate knowledge).

> (*Id.* at p. 29, ll 18-22; p. 30, ll1-5)
> Q: How many officers responded to this accident scene?
> A: Several.
> Q: Do you have any idea?
> A: Several. I didn't count them but several.
> Q: Where would I be able to get some information to determine the identities of the officers who responded?
> A: It would be on the tape.

Officer Rachlin had no knowledge of who the watch commander was at the time of the theft and accident (information that would be within the MPD's corporate knowledge).

> (*Id.* at p. 35, ll 15-21, p. 36, l)
> Q: "Who was the watch commander on May 13, 2005?
> A: At this point in time, three years later, I wouldn't be able to answer that. That, again, could be easy to find out. There are records.

Counsel for MPD obstructed Plaintiff's deposition by refusing to allow Officer Rachlin to answer questions about potential supplemental 30(b)(6) deponents.

> (*Id.* at p. 47, ll. 11-16)
> Q: And would any other officer in the 7th District be able to provide any additional information abouts the circumstances of the accident that occurred on May 13, 2005?
> MS CONNOLLY: I am going to object and instruct you not to answer.

Despite admitting that MPD had information, Officer Rachlin could not testify to that information .

> (*Id.* at p. 48, ll 21-22, p. 49, ll 1-3)
> Q: During that period of time, do you know how many 7D officers were on patrol on that date?
> A: It would be easy to find out but I don't have that information with me, no."

To date, MPD is still refusing to comply with the Court's order to produce a competent Rule 30(b)(6) witness and Plaintiff is still unable to ascertain further information concerning the circumstances of the accident.

## III.    ARGUMENT

### A.    Legal Standard

Federal Rule of Civil Procedure 72 allows a party to file specific, written objections to the findings of a Magistrate Judge.  Fed.R.Civ.P. 72(a).  However:

> A district court will affirm a magistrate judge's determination
> unless, on the entire evidence, the court is left with the definite and
> firm conviction that a mistake has been committed.

*U.S. ex rel. Purcell v. MWI Corp.*, 238 F.R.D. 321, 325 (D.D.C. 2006). In fact:

> 'the magistrate judge's decision is entitled to great deference' and
> will not be disturbed 'unless found to be clearly erroneous or
> contrary to law.'

*Collett v. Socialist Peoples' Libyan Arab Jamahiriya* , 448 F.Supp.2d 92, 95 (D.D.C.,2006) (citing *Boca Investerings P'ship v. United States*, 31 F.Supp.2d 9, 11 (D.D.C.1998)).

In this case, there is no clear error in Magistrate Robinson's order nor was the order compelling the deposition of a competent 30(b)(6) witness and granting sanctions for MPD's repeated failures to comply with both the subpoena and the Court's prior order contrary to law.

### B.    The Cou rt Does Not Lack Jurisdiction

MPD argues that this Court does not have jurisdiction to hear this case since "John and Jane Doe remain on the caption of the docket but have never been named and no person has been served." (MPD Objection, p. 9). This argument is erroneous. First, Plaintiff stated that "upon information and belief" both John Doe and Jane Doe are residents of the Commonwealth of Virginia. (See Plaintiff's Complaint, filed May 10, 2007, at 4-5.) When the Court was presented with a similar set of circumstances in *Meng v. Schwartz*, 305 F.Supp.2d 49 (D.D.C. 2004) it held that the reason it could not find diversity was because "[t]he plaintiffs also name unknown 'John and Jane Does 1-10' as defendants, but **fatally fail to plead their places of citizenship**. Nowhere in the complaint do the plaintiffs make a distinct or affirmative statement that establishes the citizenship of the John and Jane Does." <u>Id.</u> at 55(emphasis added). Plaintiff does not have that issue here. Therefore, the Court does have diversity jurisdiction over the defendants in this case.

Additionally, the fact that neither of the Doe defendants have been served does not dispose of the Court's jurisdiction over the case. In 2006, this Court, in *Olaniyi v. District of Columbia,* 416 F.Supp.2d 43 (D.D.C.,2006), held that the court had jurisdiction over John Doe defendants even where those defendants had not been served within the prescribed period:

> More relevant to the argument at hand is *M.K. v. Tenet*, 99 F.Supp.2d 12 (D.D.C.2000). In M.K., the defendants argued that the claims against thirty John Doe defendants allegedly employed by the CIA should be dismissed because the John Does had not been identified or served. M.K., 99 F.Supp.2d at 17. The Court there noted that although the 120 day period provided by Rule 4(m) for identification and service had long since elapsed, it was nevertheless appropriate, in light of the plaintiffs' contention that some discovery was needed before identification could take place, to allow the plaintiffs additional time to identify and serve the John Does. <u>Id.</u> at 17-18.

*Olaniyi v. District of Columbia ,* 416 F.Supp.2d 43, 51 (D.D.C.,2006).

Here, Plaintiff named a John Doe and Jane Doe because she had not been able to conduct discovery that would permit her to identify the proper defendants. MPD has the information Plaintiff needs to determine the circumstances of the theft and addicent. That information would allow Plaintiff to determine the proper defendants to name in lieu of a John Doe and Jane Doe. MPD has refused to provide this information since 2005. Like the plaintiff in the *M.K. v. Tenet* case and *Olaniyi v. District of Columbia* case, the only reason Plaintiff has not served John and Jane Doe is because she has been unable to obtain the necessary discovery from MPD.[3] Therefore, the fact that Plaintiff has not yet served some of the defendants does not strip the Court of jurisdiction.

> ### C.    Magistrate Robinson Ruled for Additional Sanctions Based Upon MPD's Continued Obstruction and Failure to Comply With the Court's Previous Order, a Ruling Within the Court's Authority.

At the status conference before Magistrate Robinson on April 17, 2008, Plaintiff proffered evidence supporting her position that MPD has continued to obstruct her efforts to obtain discovery. Magistrate Robinson had previously ordered that Plaintiff's Motion to Compel be granted and that the MPD provide a competent 30(b)(6) witness for deposition no later than March 12, 2008. Accordingly, Plaintiff conducted another 30(b)(6) deposition on April 15, 2008.[4] Plaintiff was unable to obtain the information requested on the subpoena because, like Officer Battle, Officer Kevin Rachlin stated that he did not have knowledge of several of the subpoena's subject areas.

---

[3]On May 1, 2008, Plaintiff did file a Motion to Amend her Complaint to name additional defendants. While the Court has not yet ruled on the motion, it is apparent from the discovery to date that complete diversity does exist between the parties.

[4] Although Plaintiff provided several dates for the deposition between the February 27, 2008 hearing and March 12, 2008 deadline set by the Court, MPD refused to produce the witness stating that he was unavailable until the beginning of April. Counsel for plaintiff was unavailable in the beginning of April so the deposition did not occur until April 15, 2008.

As a result of MPD's repeated failure to provide a competent 30(b)(6) witness as required under the Rules, Plaintiff renewed her motion for sanctions at the April 17, 2008 hearing based on MPD's failure to abide by the Court's February 27, 2008 order requiring MPD to provide a competent 30(b)(6) witness. At the status conference on April 17, 2008 the Court heard arguments about the 30(b)(6) witness and, as a result, ordered Plaintiff's oral motions to be granted. The Magistrate Judge has broad authority to issue sanctions for MPD's repeated failure to produce a competent Rule 30(b)(6) witness. ("In general, the district court enjoys wide discretion in managing discovery, and, accordingly, '[w]e review the district court's discovery ruling [s] for abuse of discretion' only. This deference extends to the district court's imposition of discovery sanctions." *Flynn v. Dick Corp.,* 481 F.3d 824, 834-835 (DC Cir. 2007) (citing *Diamond Ventures, LLC v. Barreto*, 452 F.3d 892, 898 (D.C.Cir.2006)). In this case, Magistrate Robinson, using the broad discretion permitted under the Federal Rules, granted Plaintiff's oral motion for additional sanctions based on MPD's continued failure to abide by the Court's previous order.

Finally, MPD's argument that Magistrate Robinson erred by allowing Plaintiff to orally renew her motion is without merit. It is well established that Rule 37 sanctions can be levied against a party as a result of an oral motion or an oral order. *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir.) (upholding default judgment based upon an oral order to produce documents), cert. denied, 419 U.S. 832 (1974). (See also *Penthouse Int'l, Ltd. V. Playboy Enters., Inc.*, 663 F.2d 371, 387-390 (2nd Cir. 1981)(affirming dismissal as sanction for failure to obey order that was not the result of a formal written 37(a) motion); *Brandt v. Vulcan Inc.*, 30 F.3d 752, 756 n.7 (7th Cir. 1994)(courts have broadly interpreted what consitutes "order" for purposes of imposing sanctions). Finally, as the Court explained in detail in *Tamari v. Bache & Co. (Lebanon) S.A.L.*:

Although a motion to compel usually precedes the imposition of Rule 37(b) sanctions, **a formal motion is not always necessary**. In general, **where a party has received adequate notice that certain discovery proceedings are to occur by a specific date, and that party fails to comply, a court may impose sanctions without a formal motion to compel the discovery from the opposing party**. For example, in Properties International, Ltd. v. Turner, 706 F.2d 308, 310 (11th Cir.1983), the court affirmed a district court's imposition of sanctions on the ground that the lower court's order that defendants provide the government "with complete discovery" was sufficient under Rule 37(b), since there is "no requirement that the opposing party move for [the Rule 37(b) ] order." Similarly, in Charter House Insurance Brokers, Ltd. v. New Hampshire Insurance Co., 667 F.2d 600, 604 (7th Cir.1981), this court stated that an attorney's promise in open court to produce certain documents "could be treated as the equivalent of an order" for Rule 37(b) purposes. See also Henry v. Sneiders, 490 F.2d 315, 318 (9th Cir.), cert. denied, 419 U.S. 832, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974) (Rule 37(b) sanction upheld where district court orally had ordered defendant to produce records, since "[w]here oral proceedings unequivocally give a litigant notice that certain documents are to be produced, the absence of a written order does not preclude the entry of a default judgment for failure to comply."); Jones v. Uris Sales Corp., 373 F.2d 644, 646-47 (2d Cir.1967) (proceedings in judge's chambers, where judge announced *473 that he would give counsel twenty-four hours to produce subpoenaed documents, treated as oral motion and order).

*Tamari*, 729 F.2d 469, 472 -473 (7th Cir. 1984).

As no formal motion was necessary for Magistrate Robinson to impose discovery sanctions under the broad authority afforded the Court under the Federal Rules, her ruling should not be overturned.

If any change is to be made to Magistrate Judge Robinson's order, it should be an expansion of the sanctions levied by the Court to reflect the attorney's costs and fees incurred as a result of MPD's obstructive actions preventing Plaintiff from obtaining discovery since June 29, 2007. Therefore, Plaintiff respectfully requests this Court not overrule Magistrate Judge

Robinson's Order and that the Court issue additional sanctions reflecting the additional costs and fees incurred in Plaintiff's efforts to obtain discovery from MPD.

> **D.**    **Plaintiff Provided Enough Information for Magistrate Judge Robinson To Levy Sanctions on MPD for Their Continued Failure to Provide a Competent 30(b)(6) Witness for Deposition.**

Finally, MPD argues that Plaintiff did not provide the Court with enough information to support the award of sanctions. However, Magistrate Robinson, who has been hearing this dispute for more than seven months, has reviewed the prior pleadings and held multiple hearings concerning whether MPD has complied with the Court's order to produce a competent 30(b)(6) witness for deposition, held that MPD did not comply.  Magistrate Robinson is clearly in the best position to analyze whether MPD should be sanctioned for their continued obstruction in the discovery process.

As discussed in detail above, judges are afforded broad discretion in levying sanctions for discovery abuses.  That broad discretion coupled with the standard discussed above and most recently stated in *Beale v. District of Columbia*, 2008 WL 834459, 3 (D.D.C.,March 31, 2008) "In view of this standard, the court will affirm the magistrate judge's determination unless 'on the entire evidence' the court 'is left with the definite and firm conviction that a mistake has been committed.'" (citing *Neuder v. Battelle Pac. Northwest Nat'l Lab.*, 194 F.R.D. 289 (D.D.C.2000) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 365, 68 S.Ct. 525, 92 L.Ed. 746 (1948)); *Arakelian v. Nat'l W. Life Ins. Co.*, 126 F.R.D. 1, 2 (D.D.C.1989)).

Here, there has been no mistake.  MPD produced two alleged 30(b)(6) witnesses. Both of those witnesses admitted that they did not have sufficient corporate knowledge to answer on several subject matters of the deposition. (See factual history, *supra*).  After holding multiple hearings concerning this issue, Magistrate Robinson levied sanctions as a result of the repeated

failure by MPD to provide either a single witness or multiple witnesses who could answer questions concerning the theft and the circumstances of the accident.  This was well within her broad authority regarding discovery issues and her ruling should stand.[5]

## IV.    <u>CONCLUSION</u>

Plaintiff has made a simple request, pursuant to Fed.R.Civ.P.  30(b)(6) to depose a corporate designee of MPD on matters concerning the accident involving Plaintiff and their subsequent investigation into the circumstances of the theft of the vehicle that struck Plaintiff. More than seven months have elapsed and MPD continues to obstruct the discovery process. MPD should not benefit by continuing to refuse discovery that has been ordered by the Court.

Therefore, Magistrate Robinson's ruling should stand and MPD should produce a competent 30(b)(6) witness for deposition and pay the required sanctions.

Respectfully submitted,

By:    /s/ Ernest W. McIntosh
_____
Ernest W. McIntosh
NEWMAN, MCINTOSH & HENNESSEY, LLP
7315 Wisconsin Ave., Suite 700E
Bethesda, MD 20814
(301) 654-3400
*Counsel for Plaintiff*

---

[5]The allegation that Magistrate Robinson's ruling should be overturned because Plaintiff did not submit a written certification of good faith is utterly ridiculous. At the hearing, Plaintiff made her position well known to the court about the various attempts to "work with" the MPD to obtain the necessary discovery.  It was obvious to all parties, including the Court, by that time that Court involvement would be necessary.

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the United States District Court Local Rule for the District of Columbia 5.4(d), I hereby certify that a copy of the foregoing Motion to Amend Complaint was served via the CM/ECF electronic filing system on May 8, 2008 to:

Carol Connolly, Esq.
General Litigation, Section III
District of Columbia Office of the Attorney General
441 4th Street NW, 6th Floor South
Washington, DC 20001