# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

)
**JOAN CLARK ,**                              )
                                              )
                  **Plaintiff,**              )      **C.A. No. 07-CV-00883**
                                              )      **Judge Richard J. Leon**
          **v.**                              )
                                              )
**TIDEWATER MACK, INC.** *et al.*             )
                                              )
          **Defendants.**                     )
_____)

### NON-PARTY MPD'S REPLY TO PLAINTIFF'S OPPOSITION TO NON-PARTY MPD'S OBJECTION TO ORDER OF MAGISTRATE JUDGE

Plaintiff's Opposition to Non-Party MPD's Objection to Order of Magistrate Judge Robinson, dated April 17, 2008, improperly analyzes the law in the District of Columbia and relies on facts not supported by the record. Accordingly, as discussed in more detail below, Plaintiff's Opposition should not prevent this Court from vacating Magistrate Judge Robinson's April 17, 2008, Order regarding Plaintiff's Motion for Sanctions.

### I.  Plaintiff Failed To Dispute That The Court Lacked Proper Jurisdiction.

As explained in MPD's Objection, the first reason why these sanctions are improper is that the Court lacked jurisdiction over the case when the Court issued the sanctions. Plaintiff concedes that John Doe and Jane Doe were the only Defendants that remained on the docket as of the Court's April 17, 2008, Order and that neither of them had been named or served. *See* Plaintiff's Response at 10. Despite this concession, Plaintiff alleges he nonetheless has established diversity of citizenship by alleging "on information and belief…." *See id.* Many courts have held, however, that allegations made solely on information and belief are insufficient to establish the court's jurisdiction. *See DCFSA USA LLC v. Lincoln Cartage, Inc.,*

2008 U.S. Dist. LEXIS 37517 (N.D. Ind. May 7, 2008) (allegations of federal subject matter

jurisdiction may not be the made on the basis of information and belief, only personal

knowledge) (quoting *Yount v. Shashek*, 472. F. Supp. 2d 1055,  at 10n.1, (S.D. Ill. 2006)(citing

*America's Best Inns, Inc. v. Best Inns of Abilene, L.P.,* 980 F.2d 1072, 1992 U.S. App. LEXIS

30920 (7th Cir. Ill. 1992); *see also Mass. Sch. Of Law. at Andover, Inc. v. American Bar Ass'n*,

107 F.3d 1026, 1042 (3rd Cir. 1997).   The inadequacy of such an allegation is patent here where

the Plaintiff cannot even identify the defendant, let alone pinpoint the defendant's citizenship.

It is Plaintiff's burden to establish jurisdiction based on personal knowledge, and Plaintiff has

failed to do so.  *See id.*  Plaintiff would have the Court believe that the failure to identify the

Defendant is the fault of MPD.   However, Plaintiff cannot point to anything in the record to

support his assertion that MPD purposely withheld any information regarding the owner of the

vehicle.   In fact, the record reflects that MPD produced to Plaintiff all of its records in July of

2007 and that those records disclosed the name of the decedent David Slack, who was from the

Commonwealth of Virginia. *See* Objection at 4.  Moreover, in a letter to Plaintiff's counsel in

October of 2007, MPD stated in part:

> … the District provided you with all documents pertaining to the accident and
> investigation in the instant matter – as it has been reported - that the jaguar was reported
> stolen from Manassas, Virginia.  Again, we refer you to the Virginia  Police Department
> for information surrounding the theft of the jaguar that occurred in Virginia.  They can
> be reached at: 9518 Fairview Ave, Manassas, VA 20110, phone: 703-257-8000.

*See* October 9, 2007 Letter.  Officer Battle did not know who David Slack was because as

explained to Plaintiff, the vehicle was stolen in Virginia, and MPD was not involved in that

investigation. *See Id*.

   Furthermore, Plaintiff's failure to serve Doe Defendants within the requisite 120 days,

requires dismissal of the claims.  Rule 4(m) provides that "if service of the summons and

complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period."  Fed. R. Civ. P 4(m).  *See e.g.*, *Claasen v. Brown, 1996 U.S. Dist. LEXIS 1872, (D.D.C.)* (dismissing action for plaintiffs' failure to serve process within the time provided under Rule 4(m)).

Here, at the time of Magistrate Judge Robinson's Order, Plaintiff had yet to name or serve Doe defendants nearly one year after filing of the complaint, and the case should therefore have been dismissed.  Plaintiff's reliance on *Olaniyi v. District of Columbia,* 416 F. Supp. 2d 43 (D.D.C.  2006) is misplaced.  *See* Pl. Resp. at 9.  In *Olaniyi* the plaintiff, with the *consent* of the defendants, and moved to extend the time for identification and service of the John Doe defendants, and the Court directed Plaintiff to answer by a certain date.  *Id*.  Here, there was no consent, and there are no other defendants.  Plaintiff has not cited any provision in the rules that allows for the naming of Doe Defendants with the later substitution of a real person's name at any given time the Plaintiff wishes to do so.  *See Taylor v. Federal Home Loan Bank Road Bd*., 661 F. Supp. 1341, 1350 (N.D. Tex. 1986) (where a district court dismissed claims against Doe Defendants for lack of personal jurisdiction because "the naming of the fifty Does, none of whom have been served, for the purposes of adding them to the lawsuit, if they are ever discovered, would prejudice them if they do in fact exist, because they would be treated as if they were in the suit from the filing of the complaint.").

In sum, Plaintiff has no basis for continuing to invoke the Court's jurisdiction or its subpoena and sanctioning authority against third parties when he cannot establish the Court's

jurisdiction over the subject matter, and there are no first party defendants.  Accordingly, the Court should vacate Magistrate Judge Robinson's Order requiring MPD to produce any additional 30(b)(6) witnesses or pay Plaintiff's fees or costs for April 17, 2008, because this Court had no jurisdiction since February of 2008, when Magistrate Judge Robinson approved the stipulation and dismissal with prejudice as to both Defendants Tidewater Mack, Inc, and G & H Sales Associates, Inc.  *See* Order dated 2/19/08.

**II. Sanctions Should Not Have Been Imposed In The Absence Of A Formal Motion And The Availability Of The Actual Deposition Transcript.**

At the April 17, 2008 status conference, Plaintiff improperly was allowed to renew his motion to compel and for sanctions orally without complying with Fed. R. Civ. P. 37.  That rule provides:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

The record is clear (and Plaintiff does not dispute) that Plaintiff had <u>not</u> conferred with MPD or filed a written motion.  The absence of a formal written motion was no mere technicality.  Instead, MPD was prejudiced because it was forced to orally oppose the motion without knowing all the grounds for it, or having the benefit of the transcript of the deposition on which it was based.

Plaintiff incorrectly asserts that Rule 37 sanctions can be levied against a party (in circumstances such as those at bar) as a result of *an oral motion* or an oral order to produce documents.  However, Plaintiff cites no authority (controlling or otherwise) for this proposition.  One case cited by Plaintiff, *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974), did not deal with oral motions; instead the Court issued an oral <u>*order*</u> and warned that absence of written

*orders* does not preclude imposing sanctions. Nowhere in Rule 37 does it say that Plaintiff can orally renew a motion to compel once it has already been ruled upon and ignore the prerequisites the rule requires.  Plaintiff also relies on a half-page quote from *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 472-473 (7th Cir. 1954).  In *Tamari*, the deponents had failed to appear for depositions for *years* and even under those circumstances, the Court was reluctant to uphold sanctions without a formal motion to compel.  The Court noted:

> These occurrences normally would provide sufficient notice to obviate the requirement of a formal motion to compel in a <u>Rule 37(b)</u>  case. Yet although <u>Rule 37(b)</u> allows a court to assess expenses against a party's attorney, **this is an unusually harsh penalty. We thus are reluctant to uphold this type of sanction in the absence of a formal motion to compel, even when an attorney has received substantial notice otherwise sufficient to justify <u>Rule 37(b)</u> sanctions.** Our reluctance is overcome here, though, because the Firm also had an opportunity before the court imposed this sanction to submit an extensive brief regarding the propriety of this sanction. The Firm thus had ample opportunity to explain why the Tamaris failed to appear for their depositions.

*Id.* (emphasis added).  On April 11, 2008, undersigned counsel argued that Plaintiff's new Motion to Compel challenging the competency of Officer Rachlin should be in the form of a written motion and that because the deposition had taken place two days prior to the hearing, undersigned counsel was unable to obtain a copy of the transcript and rebut any allegations made orally in open court by Plaintiff.  *See* copy of April 17, 2008, Transcript at Exhibit 1 pages 13, 27-28.  However, the Court permitted Plaintiff to argue his motion orally and rely on his recollection of the testimony in violation of Fed. R. Civ. P. 37.

**III. There Was No Factual Basis For The Imposition Of Sanctions.**

There was no basis for an award of sanctions in this case.  As explained in greater detail below, one question that supposedly was not answered was not even asked. The remaining two questions were minor and outside the scope of Plaintiff's request.  Prior to addressing these questions, Plaintiff already demonstrated a proclivity in this litigation for moving for sanctions

based on the trivialities.  Specifically, he complained that Officer Battle could not answer questions that he did not even bother to ask in the second deposition.  *See Id*. at 28.  MPD made this point in its initial objection, without response from Plaintiff.

On April 17, 2008, Magistrate Judge Robinson improperly permitted Plaintiff to orally argue a motion to compel based on his assertion that Officer Rachlin was not a competent 30(b)(6) designee.  MPD was extremely prejudiced by this situation and was forced to defend this oral motion based on undersigned counsel's recollection of the deposition and a brief glance at Plaintiff's deposition transcript.  On April 17, 2008, Magistrate Judge Robinson stated in part that "…[a]nd in a nutshell, the Plaintiff's concern is that there are three questions with sub-parts and follow ups that the designee did not answer."  *See Id. at* page 27.  The Court asked undersigned counsel if she could address the basis of her contention that Officer Rachlin was competent and undersigned counsel responded "No, I cannot, your honor. Because when we took this brief recess, Mr. McIntosh and I went over three pages … yet he stood up here and referred to several pages and I didn't even get the opportunity to look at it and I do believe he's mischaracterizing it, and I think it absolutely has to be in writing."  *See Id*.  Magistrate Judge Robinson denied this request.  *See Id*.  Yet, in his opposition, Plaintiff fails to cite to these three questions and Officer Rachlin's responses.

**A.  <u>The Asserted Failure To Answer A Question That was Never Asked, Cannot Be A Reason For Awarding Sanctions.</u>**

Plaintiff's counsel incorrectly argued on April 17, 2008, that Officer Rachlin could not identify who from the Hit and Run unit was assigned to the case.  *See* Copy of April 17, 2008, Transcript at Exhibit 1, page 13.  Plaintiff stated to the Court: "Also, your Honor, he [Officer Rachlin] didn't do an investigation, but the case was referred to the Hit and Run with a suspect, and he doesn't know what Hit and Run did."  *See Id*.  However, after reviewing the transcript,

there is no specific question to Officer Rachlin asking him who from the Hit and Run unit was assigned to the case and *nowhere* in Plaintiff's opposition does he mention this question or dispute this fact. Further, this question is irrelevant as there was no officer from the Hit and Run Unit assigned to the case. As such, this question cannot possibly serve as a basis for the Court to award sanctions.

### B. The Information Called For By Questions 2&3 Was Minor, Available From Another Source, And MPD Offered To Provide This Information After The Deposition. As Such, This Cannot Be The Basis For The Court To Award Sanctions.

On April 17, 2008, Plaintiff's counsel also incorrectly argued that Officer Rachlin could not identify the officers at the scene. *See Id.* at page 28. Undersigned counsel stated at the hearing: "This is question number 2, where Mr. MacIntosh says in his initial question we [Officer Rachlin] did not reveal the identity of the Officers at the scene. However, after reviewing the transcript (during the recess) Plaintiff's counsel was only able to refer to one question to Officer Rachlin where he responded there were several officers at the scene." *See Id*. The question was:

> Q. How many officers responded to the scene?
> A. Several.
> Q. Do you have any idea?
> A. Several, I didn't count them but several.
> Q. Where would I be able to get some information to determine the identities of the Officers that responded?
> A. It would be on the Tape.

*See* Officer Rachlin's Depo. Trans. at Exhibit 2, page 28, 29. Magistrate Judge Robinson asked undersigned counsel if she had listened to the tape and she responded: "Yes. I've listened to it several times and Mr. McIntosh –in fact, we had a discussion at Officer Battle['s] [deposition] whether or not to play it." *See* April 17, 2008, Transcript at Exhibit 1 page 29.

Undersigned counsel also argued "one question – how many officers responded to the scene? Read the rest of the transcript. [Officer Rachlin] did a great job in answering all the questions. We were surprised [Plaintiff] didn't ask any questions that he complained that Officer Battle couldn't answer.  And I just feel that I am misleading the court without having the opportunity to really see these questions in writing…." *Id* at 32.  Clearly, this question is minor and Plaintiff's counsel could have followed up on these issues in the depositions.

In addition, Plaintiff's counsel asked Officer Rachlin the identity of the Officer in Cruiser 8632.

> Q. Who was the Officer in Cruiser 8632?
> A. I don't know the name at this time but we can find out, I am sure.
> Q. I would appreciate you providing that information, the identity of the officer in Cruiser 8632.
> Ms. Connolly: There is no objection at this time [to providing you with the name] however, I would just like the record to note that I believe Officer Rachlin can answer questions relevant to Cruiser 8632 and that the identity of the person in the cruiser is beyond the scope of this subpoena.

*See* Officer Rachlin's Depo. Trans. at Exhibit 2 pages 28-29.  MPD does not dispute that Officer Rachlin did not know the Officer's name, but nonetheless Officer Rachlin was able to testify to what the Officer in Cruiser 8632 said and did on the date of the accident.  *See Id.* Clearly, Officer Rachlin was a competent 30(b)(6) witnesses.  Moreover, as discussed below, MPD offered to provide the answer to these questions after the deposition and suggested that Plaintiff put his three specific questions that he believed Officer Rachlin could not answer in writing, in the form of interrogatories, to which MPD would respond, but Plaintiff rejected this offer.  *See* Copy of April 17, 2008, Transcript at Exhibit 1 page 21.

Accordingly, the Court should vacate Magistrate Judge Robinson's Order requiring MPD to produce any additional 30(b)(6) witnesses or pay Plaintiff's fees or costs for April 17,

2008, because these two remaining questions were minor and MPD offered to provide the information.

### C. MPD Did Not Obstruct Plaintiff's Deposition But Rather Proceeded In Good Faith Throughout This Litigation.

Plaintiff incorrectly argues in his Opposition that "Counsel for MPD obstructed Plaintiff's deposition by refusing to allow Officer Rachlin to answer questions about potential supplemental 30(b)(6) deponents." *See* Opp. at 7.   On April 17, 2008, Magistrate Judge Robinson asked undersigned counsel "on what basis did you instruct the witness not to answer?"  *See* Copy of April 17, 2008, Transcript at Exhibit 1 page 9.  Undersigned counsel responded: "I did instruct the witness not to answer. However, I did withdraw the objection and allow him to answer.  I do not have a copy of the transcript, but I wrote down the question in case the Court wanted to know what it was.  I objected several times throughout the deposition as to beyond the scope.  It finally got to the point where I objected [and] asked for an indulgence. I asked Mr. McIntosh to rephrase the question [and] he did. [He] asked a series of follow ups and then I withdrew my objection and [Officer Rachlin] did answer it."  *See Id. See also* Depo. Trans. of Officer Rachlin at Exhibit 2 at page 50.

The record is clear that MPD did not obstruct Plaintiff's deposition or in any way not comply with Plaintiff's 30(b)(6) request.   The question was answered after it was rephrased in an attempt to bring it within the scope of the notice.

Undersigned counsel has done nothing but act in good faith and try and work with Plaintiff's counsel to comply. On June 25, 2007, Plaintiff served the MPD with a subpoena requesting documents and a 30(b)(6) witness.  Specifically, "Plaintiff wishes to examine the witness as to matters relating to their investigation of a stolen jaguar automobile involved in an

accident with Plaintiff on May 13, 2005, referenced in the District of Columbia Metropolitan Police Department PD-10 and matters relating to the investigation of the stolen vehicle and accident." *See* Notice of Deposition.  The District informed Plaintiff that MPD already produced all documents, pictures, and the tape of the radio run of the traffic accident, and that MPD did not have any documents concerning the investigation of the alleged stolen jaguar. Notwithstanding this fact, the District designated Officer Battle, and she appeared for deposition 2 months and three days later on August 28, 2007.

In addition, on December 11, 2007, MPD offered to produce a second designee, Officer Rachlin, in an effort to resolve the matter.  Undersigned counsel stated on February 28, 2008, "So in the spirit of this Court trying to get us to resolve it, we offered Officer Rachlin … we did not agree with [Plaintiff's] position [that Officer Battle was not competent] but we [were willing to] produce one additional witness." *See* Copy of February 28, 2007, transcript at Exhibit 3, page 7.  Plaintiff was not satisfied with MPD's offer and requested that MPD produce not only Officer Rachlin but produce a total of <u>three additional</u> designees. *See Id*. at 4.

Furthermore, on April 17, 2008, before the Court made its ruling that is the subject of this Objection, MPD proposed, consistent with *Alexander v. FBI*, 186 F.R.D. 148 (D.D.C. 1999), that Plaintiff put his three specific questions that he believed Officer Rachlin could not answer in writing, in the form of interrogatories, and that MPD would respond. *See* Copy of April 17, 2008, Transcript at Exhibit 1 page 21.  Plaintiff also rejected this offer.  As such, MPD did not obstruct Plaintiff's deposition and this cannot serve as a basis for the Court to award sanctions.

### D. Plaintiff Asserted That He No Longer Requested Sanctions At The February 27, 2008 Hearing And The Court Denied It In Part As Moot.

Lastly, Plaintiff fails to cite to anything in the record that occurred between February 27, 2008 and April 15, 2008 that would entitle him to sanctions. MPD complied with the Court's Order and produced an additional 30(b)(6) witnesses, Officer Kevin Rachlin.

In his Opposition, Plaintiff appears to argue that Non-Party MPD timely failed to produce Rachlin for deposition. *See* Memo at page 6. However, Plaintiff's counsel fails to mention that MPD suggested alternative dates and Plaintiff's counsel was unavailable and on an extended vacation traveling outside the country. Accordingly, Plaintiff failed to demonstrate that he is entitled to sanctions. *See Dada v. Children's National Medical Center,* 715 A.2d 904, 909 (D.C. 1998) (one of nonexclusive list of factors to be considered is whether party allegedly failing to comply with discovery did so "inadvertently or willfully"). As argued in its Objection, the record here reflects the good-faith efforts of a Non-Party - the MPD- to fully comply with the Court's Order.

### CONCLUSION

In sum, Non- Party MPD has fully complied with Plaintiff's multiple requests. MPD is not yet a party to this matter and is being treated unfairly by having to proceed as if it were in the discovery process without being afforded the protections it would normally be provided if it were a Defendant. As such, the Court should vacate magistrate Judge Robinson's Order requiring MPD to produce any additional 30(b)(6) witnesses or pay Plaintiff's fees or costs for April 17, 2008.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General
for the District of Columbia


GEORGE  C. VALENTINE
Deputy Attorney General, Civil Litigation Division


/s/  Samuel C. Kaplan
SAMUEL C. KAPLAN (463350)
Assistant Deputy Attorney General


/S/ Carol A. Connolly
CAROL A. CONNOLLY (468126)
Assistant Attorney General
441 Fourth Street, N.W., Suite 6S012
carol.connolly@dc.gov
202-724-6511

June 16, 2008.


<u>CERTIFICIATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing Reply was sent via Casefilexpress, this

16th day of June 2008 to Plaintiff's Counsel, Ernest W. McIntosh.


/s/Carol A. Connolly
Carol A. Connolly
Assistant Attorney General

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x
                              :
In the Matter of:            :
                              :
JOAN CLARK,                  :
                              :
     Plaintiff,              :
                              :
          vs.                :    Civil Action No. 07-0883
                              :
TIDEWATER MACK, INC., et al., :
                              :
     Defendants.             :
                              :    Washington, D.C.
- - - - - - - - - - - - - - - x    April 17, 2008


TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:        ERNEST W. McINTOSH, JR., ESQ.

For the Defendants:       TIMOTHY E. FIZER, ESQ.
                          STEPHEN A. HORVATH, ESQ.

For Non-Party
 District of Columbia:    CAROL A. CONNOLLY, ESQ.


Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
M2441V-2/bf

1                        **P R O C E E D I N G S**

2            THE CLERK:  Civil Case Number 07-883, this is in

3    the matter of Joan Clark versus Tidewater Mack, Inc.

4    Present in the courtroom is Ernest W. McIntosh, Jr., and

5    Ms. Carol Connolly representing the non-party police

6    department.  This is here for a status hearing.

7            THE MAGISTRATE JUDGE:  Now, good morning to all

8    of you.  I wish to begin with an apology.  You waited quite

9    patiently when this matter was first scheduled.  As you

10   know, this is the month of the Court's criminal assignment,

11   and you saw that our calendar took far longer to complete

12   than I anticipated when I first scheduled you, and I

13   apologize for the inconvenience that this must have caused

14   you.  I hope that you were able to use the time, the new-

15   found time that you had, to confer in an effort to resolve

16   the remaining issues regarding the 30(b)(6) deposition which

17   the Court compelled.

18           If that is not the case, then I believe what

19   remains at this point is to discuss how it is that you,

20   Mr. McIntosh, wish to proceed.  I am putting the onus on you

21   because it was, of course, your motion that brought the case

22   to the posture where we now find it.  And I do not know

23   whether your request will be in the form of another motion

24   to compel, a request for sanctions, a request for leave to

25   take discovery of some other sort, or some other possibility

1    that I haven't mentioned.  So why don't I hear from you

2    first.

3            MR. McINTOSH:  In light of that, Your Honor,

4    I'll just give you a summary of my comments.  I had been

5    prepared to argue a long time, but here we go.  Here we go.

6    The City or the police department has refused to comply with

7    this Court's order and certainly violated the requirements

8    of Rule 30(b)(6).

9            I could go through a litany of facts, but

10   fundamentally after your order on February 27th said that

11   the deposition was to be completed by March 12th I called

12   Ms. Connolly's office.  She had to wait for some authority

13   from her supervisor to send some letter to me.  And the

14   letter came back saying that they were going to designate

15   Officer Rachlin as a 30(b)(6) witness, I could not depose

16   anybody else, and that would be the end of it.

17           So I gave them three or four dates prior to --

18   and the last date being March 12th -- where I could do the

19   deposition.  They told me that Officer Rachlin would not be

20   available until April the 2nd.  I told them I'd be out of

21   town on vacation for two weeks and I'd be back around April

22   the 2nd.  We finally got together and we did the deposition

23   yesterday.  Of course, your order of February 27th also said

24   to show up at a status conference on April the 2nd.  I got

25   back from vacation and I was here.  The City was not here.

1          Now.  The deposition that occurred yesterday was

2    with Officer Rachlin, and he was not able to comply with the

3    requirements of 30(b)(6).

4          THE MAGISTRATE JUDGE:  In what respect?

5          MR. McINTOSH:  Well, he said the only thing that

6    he knew was that he heard the car speed through the stop

7    sign, heard a crash, and heard from the radio that suspects

8    were running.  He said there were several people, several

9    officers at the scene of the crash.  He didn't know who they

10   were, but it was possible to determine who they were.

11         I said that the transcript that was given to me

12   indicated that a car, Cruiser 8632, was following this car

13   that ran into the vehicle in which my client was riding, and

14   I asked for the identity, and Ms. Connolly directed him not

15   to answer that question because it was supposedly beyond the

16   scope of the subpoena.  And also, Officer Rachlin said that

17   he didn't investigate the case and that the case was

18   referred to a hit and run unit and he didn't know what the

19   hit and run unit did.

20         Now, all of that flies in the face of Alexander,

21   which is, I guess, the premier case on this subject, which

22   says that when you submit a 30(b)(6) request, the corporate

23   entity is supposed to give you all the knowledge that that

24   corporate entity has.  And if one deponent can't give it to

25   you, you can go through several deponents.

1          THE MAGISTRATE JUDGE:  Mr. McIntosh, let me ask

2  you to refer to the list of topics which accompanied the --

3          MR. McINTOSH:   The subpoena?

4          THE MAGISTRATE JUDGE:   -- subpoena.

5          MR. McINTOSH:   Okay.

6          THE MAGISTRATE JUDGE:  And to list each of the

7  topics as to which you contend, or with respect to which you

8  contend the 30(b)(6) designee was unable to provide a

9  response or that there was an objection and the designee had

10  no opportunity to provide a response.

11          MR. McINTOSH:  Well, I would say they willfully

12  and purposely refused.  But the language of the 30(b)(6)

13  statement says, "The Plaintiff wishes to examine the witness

14  in the following matters into their investigation of a

15  stolen Jaguar automobile involved in an accident and matters

16  relating to the investigation of the stolen vehicle and to

17  the accident."  And then the witness was instructed to bring

18  specific documents; they are four in number.

19          But to cut to the chase, Your Honor, I need to

20  know the circumstances of this accident.  And they have

21  identified several officers who were at the scene who would

22  possibly give me this information or answer these questions,

23  but they have not provided them.  The police car that was

24  following the -- or following or looking at the vehicle,

25  they refused to give me the identity of the people in

1    that car.

2          And they make the argument, they've made it

3    before, that, well, I'm trying to build a case against the

4    District of Columbia.  I may or may not be, but I have no

5    interest in the chase case but I need these facts in order

6    to amend the complaint, because I have other defendants in

7    this case and I need the information about this case.  And

8    the District, since 2005, has refused to give this to me.

9    And I have, if Your Honor wants it, letters and e-mails to

10   substantiate everything I've just said.

11         THE MAGISTRATE JUDGE:  No, my question at this

12   point is only whether you can enumerate, not simply with

13   regard to yesterday, but throughout the course of this

14   effort to take the deposition, what topic or what matters

15   have not been disclosed.

16         MR. McINTOSH:  Okay.

17         THE MAGISTRATE JUDGE:  I'm looking now at the

18   notice of deposition, your notice of deposition.

19         MR. McINTOSH:  Yes.  Well, Your Honor, it's the

20   facts and circumstances surrounding the accident.  That has

21   not been disclosed to me.  That information --

22         THE MAGISTRATE JUDGE:  Was a privilege asserted?

23         MR. McINTOSH:  By the City?

24         THE MAGISTRATE JUDGE:  Yes.

25         MR. McINTOSH:  No privilege was asserted, Your

1    Honor.  The City first provided -- I mean, first provided

2    the officer who did the -- no, first provided me with some

3    documents.  Then they provided the officer who did the

4    police report.  But in my motion, I list and itemize that

5    the officer didn't know all about the accident and the

6    officer referred me to other officers.  And then the next

7    officer that they designated pursuant to your order still

8    didn't have the information and identified other people who

9    may have it.

10         THE MAGISTRATE JUDGE:  So what is it that you

11    request at this point?

12         MR. McINTOSH:  Okay.  Generally and specifically.

13    Generally, I think the best way is for some supervisory

14    officer in the 7th District to go through the documents and

15    tapes and provide me the identity of all the officers who

16    were at the scene of that accident, specifically to provide

17    me the identity of the officer who was following that

18    vehicle.  And then also to identify who the officers were in

19    the hit and run unit, and what they did pursuant -- because

20    they developed a suspect in this case pursuant to the

21    information that they got.

22         Now, those are the specific things I asked for,

23    I've always asked for it, and I think the City has just

24    willfully and intentionally thwarted my efforts and the

25    purpose of 30(b)(6) and your order.  So I would now ask for

1    sanctions and attorney fees.

2              THE MAGISTRATE JUDGE:  What is your contention

3    regarding the production of documents pursuant to the second

4    aspect of your notice?

5              MR. McINTOSH:  I think -- okay, I think, I think

6    the City may have produced almost all of the documents.  In

7    the deposition yesterday, I had a transcript that the City

8    gave me, but the officer said this transcript doesn't

9    totally reflect what's on the tape.  So I may not have all

10   the information in terms of the documents.  And that is why

11   I said that some supervisory officer needs to go through

12   their tapes and give me a corrected transcript about this

13   matter.

14             THE MAGISTRATE JUDGE:  Very well.  Thank you,

15   Mr. McIntosh.

16             Ms. Connolly?

17             MS. CONNOLLY:  Good morning, Your Honor.

18             THE MAGISTRATE JUDGE:  Good morning.

19             MS. CONNOLLY:  There are several issues that

20   Mr. McIntosh has raised.  I don't know if the Court would

21   like to guide me in which ones they want me to answer or if

22   we should just start off whether or not the competency of

23   Officer Rachlin complied with the 30(b)(6) of this Court's

24   order.

25             THE MAGISTRATE JUDGE:  Well, let me ask first,

1  on what basis did you object and instruct the -- did you

2  instruct the witness not to answer?

3          MS. CONNOLLY:  I did instruct the witness not to

4  answer.  However, I did withdraw that objection and allow

5  him to answer.  So I do not have a copy of the transcript,

6  but I wrote down the question in case the Court wanted to

7  know what the question was.

8          I objected several times throughout the deposition

9  as "beyond the scope."  It finally got to a point where I

10  objected, instructed him not to answer, asked for an

11  indulgence.  I asked Mr. McIntosh to rephrase the question;

12  he did.  Asked a series of follow-ups, and then I withdrew

13  my objection and the witness did answer it.  So there is no

14  question that remains pending that he did not answer.  And

15  I do have the question if the Court would like --

16          THE MAGISTRATE JUDGE:  What is your contention

17  regarding the ability of the witness to answer the questions

18  that were asked?  I'm not speaking of the witness's

19  knowledge, since we know that this is -- I mean, the

20  witness's personal knowledge, since this was a 30(b)(6)

21  deposition, but what is your proffer regarding whether the

22  witness was prepared to answer questions within the scope?

23          MS. CONNOLLY:  Our position is that Officer

24  Rachlin was a competent 30(b)(6) witness with 24 years on

25  the force --

1          THE MAGISTRATE JUDGE:  Well, that's not my

2     question.

3          MS. CONNOLLY:  -- answered the question --

4          THE MAGISTRATE JUDGE:  My question is, what is

5     your proffer regarding whether he was prepared to answer the

6     questions.

7          MS. CONNOLLY:  I was at the deposition and I

8     believe he prepared and answered all the questions

9     adequately and that there is no question that Mr. McIntosh

10    can stand and tell the Court he was unable to answer.

11         And this Court started off saying, what is the

12    narrative of questions.  And if I can just have your

13    indulgence for one moment.

14         Officer Battle.  When we had the original

15    30(b)(6), Mr. McIntosh complained that Officer Battle was

16    not able to answer the following questions.  This is page 5

17    of his motion.  First question, "Who is David Slack?"  His

18    name appeared on one of the forms.  "What does OSD mean?"

19    Next question, "What detective, if any, was on this case?"

20         He did not ask Officer Rachlin any of these

21    questions whatsoever.  And he claimed that he's relying on

22    a case -- if you read the Alexander case, which he's relying

23    on, it specifically says in that case they denied the

24    request to have a substitute 30(b)(6).  This Court ordered

25    us to do so and we did.  And that Court specifically says,

1    "The designating party has a duty to substitute an

2    appropriate deponent when it becomes apparent that the

3    previous deponent is unable to respond to certain relevant

4    areas of inquiry."

5             THE MAGISTRATE JUDGE:  I'm going to interrupt

6    you one moment, Ms. Connolly, to ask you to return,

7    Mr. McIntosh.  Will you now list, please, every question as

8    to which you contend a designee, be it yesterday's designee

9    or an earlier one, either did not or could not answer a

10   question.

11            MR. McINTOSH:  Circumstances and facts --

12            THE MAGISTRATE JUDGE:  What are the questions?

13            MR. McINTOSH:  Okay.  Okay.  The questions, number

14   one, "Can you tell me --" let me do it this way, Your Honor.

15            THE MAGISTRATE JUDGE:  Are you looking at a

16   transcript?

17            MR. McINTOSH:  No, I'm not looking at a

18   transcript, Your Honor.  I'm trying to respond to you in an

19   intelligent way.

20            I need to know what the officers in the vehicle

21   that were following, I think that's vehicle 8632, that were

22   following the stolen car, what they did.  What they saw.

23   What the vehicle was doing.  Why they followed the vehicle.

24            THE MAGISTRATE JUDGE:  Now, to whom did you ask

25   that question?

1          MR. McINTOSH:  I asked Officer Rachlin about his

2     knowledge of this accident, and he told me, at page 26 and

3     page 42, that the only thing he knew is that he heard over

4     the radio that a car had sped through a stop sign.  He heard

5     that there was an accident, and he heard that suspects were

6     running.

7          So he had no knowledge of these specific facts

8     that led up to this accident.

9          THE MAGISTRATE JUDGE:  And by "these specific

10    facts," do you mean what the officers following the stolen

11    car said and did.

12         MR. McINTOSH:  Yes, what they saw, said, heard

13    and did.  And then also, I asked Officer Rachlin in trying

14    to find out information about the circumstances of the

15    accident, "How many officers were at the scene?"

16         "I don't know, several."

17         "Do you know their identities?"

18         "I don't know."

19         "Can we find their identities?"

20         "Yes, you can."

21         "I need to know the identity of the officers that

22    pursued that car, 8632, they're in SOD."

23         "Yes, you can find that."

24         But he didn't know.

25         THE MAGISTRATE JUDGE:  Anything else?

1          MR. McINTOSH:  Also, Your Honor, that he didn't

2     do an investigation, but the case was referred to Hit and

3     Run with a suspect, and he doesn't know what Hit and Run

4     did.  So who received the case in Hit and Run, and what did

5     they do?

6          THE MAGISTRATE JUDGE:  Are those the only

7     questions that no designee could answer?

8          MR. McINTOSH:  Yes, Your Honor.

9          THE MAGISTRATE JUDGE:  Very well, thank you,

10    Mr. McIntosh.

11         Now, Ms. Connolly, let me ask you to address those

12    three questions, some of which have sub-parts, of course.

13    Beginning with the first one.  Did your designee answer the

14    question regarding what the officers following the stolen

15    car saw, heard, said and did.

16         MS. CONNOLLY:  I believe he has, Your Honor.

17    I believe that --

18         THE MAGISTRATE JUDGE:  Who is "he."

19         MS. CONNOLLY:  Officer Rachlin.

20         THE MAGISTRATE JUDGE:  Okay, what did Officer

21    Rachlin say in response to that question?

22         MS. CONNOLLY:  The deposition was two days ago and

23    I was unable to obtain a copy of the transcript.  I did tell

24    the Court Reporter that of course I have an intention to

25    order it, but working for the District I did not have

1  permission without a purchase order to order it.

2          THE MAGISTRATE JUDGE:  Well, what do you recall --

3          MS. CONNOLLY:  Having said that --

4          THE MAGISTRATE JUDGE:  -- about whether he

5  answered the question?

6          MS. CONNOLLY:  My recollection as to what he

7  testified to was there was a cruiser, and if you listen to

8  the tape, on the tape he testified that the office -- he

9  testified this was not a chase.  To the best of my

10  recollection, he testified the officer's voice was calm,

11  that he reported -- Court's indulgence.

12          That the officer was calm, that there was no

13  sirens, that he reported that there was a Jaguar going

14  through a stop sign, and he was able to testify because he

15  was competent and he was at the scene and he heard the radio

16  run, he heard it come across the radio.

17          And I just want to mention that this tape, to the

18  best of my knowledge, was produced to Mr. McIntosh, who

19  referenced it at Officer Battle's deposition, but made the

20  choice not to play it.  Because perhaps if we played it,

21  then any follow-up questions that were necessary could have

22  been answered at that time.

23          So as to the first question, whether or not

24  Officer Rachlin testified, I believe he has.  And if I

25  obtain a copy of the transcript I believe I'd be able to

1    cite to portions where he said what in fact the officer did.

2            Now, he did not know the identity --

3            THE MAGISTRATE JUDGE:  Did he account -- go ahead.

4            MS. CONNOLLY:  But we have no objection to

5    disclosing the identity.  If this case simply is what is

6    the identity of the officers, and that's the end of it?

7    I think Mr. McIntosh and I can work together and I will

8    produce that.

9            The problem is, that's not what will satisfy his

10   30(b)(6) according to him.  He wants to then depose them.

11   And I think this is going way beyond the scope of the

12   30(b)(6).  We've tried to be reasonable.

13           THE MAGISTRATE JUDGE:  Well, my assumption is that

14   the request to depose the officers would flow only from a

15   determination by Plaintiff's counsel that the 30(b)(6)

16   designee was unable to answer the questions.  Am I correct,

17   Mr. McIntosh?

18           MR. McINTOSH:  That's correct, Your Honor.  And

19   Your Honor, again, the 30(b)(6) asks for the circumstances

20   of the accident, knowledge of the circumstances of the

21   accident by the police department.  And obviously, Officer

22   Battle didn't have it, Officer Rachlin doesn't have it, and

23   according to the law, that they have to designate other

24   people who do.  And the facts developed so far indicate that

25   several officers were at the scene and the people in

1    Cruiser 8632 would know a lot about the accident.  But they

2    refuse to let me do that.

3         THE MAGISTRATE JUDGE:  Thank you, Mr. McIntosh.

4    Ms. Connolly, was Officer Rachlin able to answer questions

5    regarding how many officers were at the scene and the

6    identities of those officers?

7         MS. CONNOLLY:  No.  He did not know the identity

8    of the officers.  However, he was able to say -- let me just

9    be clear to the Court.  He was able to testify as to the

10   PD-10, which was Officer Battle; as to Mary Turner; as to

11   Tiffany Jones -- all the relevant people that are in the

12   reports.  And he looked at the chronology and he told

13   Mr. McIntosh at his deposition, the officers identified

14   there are listed on the chronology and in the tape.

15        So the relevant key players that were there, he

16   was able to testify to.

17        THE MAGISTRATE JUDGE:  But my question is, did the

18   deponent answer the questions regarding how many officers

19   were at the scene and questions regarding the identities of

20   the officers at the scene.  Did he answer the questions.

21        MS. CONNOLLY:  Well, I think that's a confusing

22   question by the Court because, Your Honor, there wasn't one

23   specific question.

24        THE MAGISTRATE JUDGE:  I said, did he answer the

25   questions regarding the number of officers at the scene and

1  the identity of the officers at the scene.

2          MS. CONNOLLY:  To the best of my knowledge, the

3  one question that was posed, "Were there other officers at

4  the scene," and he answered, "Yes."

5          And then he said, "Do you know the identity of the

6  officers that were at the scene?"  And he said, "No," but

7  referred him to the chronology, that we can go through it

8  together.

9          THE MAGISTRATE JUDGE:  Did either designee answer

10  the questions regarding the hit and run investigation?

11          MS. CONNOLLY:  Yes.  There was one question, and I

12  believe the question that was posed by Mr. McIntosh -- this

13  is only to the best of my recollection -- had to do with,

14  there was a form and it says, "Hit and run or auto theft,"

15  and he asked the question regarding the hit and run.  There

16  were no follow-up questions.  For example, there was no hit

17  and run investigation.  There was no detective.  There were

18  no follow-up questions.

19          THE MAGISTRATE JUDGE:  Well, did the designee say

20  that there was no investigation?

21          MS. CONNOLLY:  There was no follow-up question.

22  There was nothing.  These were just questions that were one

23  specific line, like for example, "Tell us --" you know,

24  "This is Cruiser 8632, who was in it?"

25          "I don't know the identity."

1          Period.

2          But if there were ten follow-up questions, Officer

3   Rachlin can tell you, this deposition -- I don't even think

4   it was an hour, Your Honor.  He was prepared to testify.

5   "I listened to the tape.  I know what happened.  I heard his

6   voice.  I was at the scene."  He was prepared.  Just because

7   Mr. McIntosh chose to ask one question without follow-ups

8   doesn't make him not a competent 30(b)(6), and he challenged

9   his competency before we even started the deposition.

10         THE MAGISTRATE JUDGE:  What do you mean, "He

11  challenged his competency"?

12         MS. CONNOLLY:  Starting back to Officer Battle,

13  when we began Officer Battle's deposition, within five

14  minutes we went off the record and Mr. McIntosh said,

15  "I don't believe she's going to be able to answer the

16  questions."  And I said, "Mr. McIntosh, you haven't asked

17  any questions to determine her competency."

18         Same with Officer Rachlin.  Prior to the

19  deposition he sent me an e-mail saying, "I don't believe

20  Officer Rachlin is going to be able to comply.  I need the

21  officers in the cruiser."  And I said, "We haven't even had

22  the deposition."  And I've met with Officer Rachlin probably

23  three times between the time the Court designated -- the

24  time the Court ordered, and the deposition.  He was fully

25  prepared.

1          There were no follow-up questions.  And had there

2    been follow-up questions, he would have said, "There was no

3    detective assigned."  And none of the questions he asked

4    Officer Battle that he complained of in his motion, in his

5    pretrial brief, and his reply were asked to Officer Battle.

6    The only questions offered to Officer Rachlin regarded the

7    alleged following of the cruiser.

8          And again, if he wanted the identity and that

9    would satisfy his request, of course we would get him the

10   identity.  But it just doesn't make sense.  This is going

11   way beyond the scope.  His concern, which he disclosed to

12   me, was whether or not he can build a gross negligence case

13   in a police chase matter.  That's not what we're here for.

14   This is going way beyond, Your Honor, the rules of

15   discovery.  These are depositions.  Add the District as a

16   defendant and then we go through the proper channels of

17   discovery.  Is he going to take all of their depositions and

18   then add the District and then want to re-depose all these

19   people again?  I just don't think this is within the scope

20   of discovery or complies with any of the cases he cited to.

21          The case he cited to and he's relying in, they did

22   not allow a re-designee.  This Court ordered a re-designee,

23   and the law says to go back to respond to certain relevant

24   areas of inquiry.  None of the questions were re-posed to

25   Officer Battle.

1          THE MAGISTRATE JUDGE:  Very well.  Thank you,

2    Ms. Connolly.

3          MS. CONNOLLY:  If I can have the Court -- okay.

4          MR. McINTOSH:  Your Honor, I have the deposition

5    with me.

6          THE MAGISTRATE JUDGE:  Is this from yesterday?

7          MR. McINTOSH:  Yes, from yesterday.  I'll let

8    Ms. Connolly look at it with  me, but --

9          THE MAGISTRATE JUDGE:  Very well.  Why don't the

10   two of you confer so that you will be in agreement regarding

11   the questions and answers which occasion what appear to be a

12   concern on your part, Mr. McIntosh, that the District hasn't

13   complied.

14          My original intention was indeed to set a date for

15   this matter to be addressed by a written motion, but I have

16   already heard enough by way of background that I believe

17   that we can simply proceed this morning.  And in a nutshell,

18   the Plaintiff's concern is that there are three questions

19   with sub-parts and follow-up that the designee did not

20   answer.  And I'm not certain that that requires a written

21   motion.  If that's the case, then the Court intends to enter

22   another order extending the date by which the District

23   _____ MPD must comply, and possibly awarding the

24   Plaintiff's costs since I've already compelled this

25   discovery.

1          So we'll take a brief recess so you can look at

2     the same set of questions of answers.

3          MR. McINTOSH:  All right.  Thank you, Your Honor.

4          MS. CONNOLLY:  Your Honor, if I just --

5          THE MAGISTRATE JUDGE:  Very well, thank you.

6          MS. CONNOLLY:  -- may ask a question for guidance

7     by the Court?  Are we asking Plaintiff's counsel to

8     specifically point to the questions and whether or not they

9     were answered?  Because without an opportunity to actually

10    know --

11         THE MAGISTRATE JUDGE:  Yes.  I said questions and

12    answers, so I want you to have the same series of questions

13    and answers at hand when you argue -- in your case,

14    Mr. McIntosh, that the questions weren't answered, or in

15    your case, Ms. Connolly, that they were.

16         MS. CONNOLLY:  Thank you.

17         THE MAGISTRATE JUDGE:  I mean, that's really all

18    we're talking about right now.  Three sets of questions.

19         MS. CONNOLLY:  In the alternative, if Mr. McIntosh

20    would put them in an interrogatory, could we --

21         THE MAGISTRATE JUDGE:  Well, there is no

22    alternative at this point, because I've ordered the 30(b)(6)

23    deposition and all I can determine at this point is whether

24    the questions were answered or not.  That we have a more

25    limited inquiry on our agenda than I initially thought.

1  So the parameters are that Mr. McIntosh contends that there

2  are three series of questions and answers which will show

3  the designee wasn't prepared.

4            MS. CONNOLLY:  Thank you.

5            THE MAGISTRATE JUDGE:  All right.  Thank you.

6  We'll take a brief recess.

7            (Whereupon, a brief recess was taken.)

8            THE CLERK:  We're back on the record.

9            THE MAGISTRATE JUDGE:  Now, Mr. McIntosh, are you

10 prepared to read the questions and answers which support

11 your contention that there are three categories of questions

12 with follow-up that the designee didn't answer?

13           MR. McINTOSH:  First off, the subpoena asked for

14 circumstances of the accident, and this officer does not

15 know everything that happened at the accident.  I refer to

16 page 26, "Officer, can you tell us what happened in the

17 accident?"

18           "I'm a auto theft investigator.  My partner and I

19 were in the car on patrol.  We happened to be a few blocks

20 from this area when the officer came over the radio advising

21 us that the Jaguar had passed a stop sign at a high rate of

22 speed and the suspects might be armed that are in the

23 vehicle.  As we go into the area, another cruiser comes over

24 the radio and says that the vehicle has been involved in a

25 crash, he needs a ambulance and this is where the suspects

1　are running.  At that point, my partner got out on foot.

2　I stayed in the car to come around from a different angle.

3　The search, for us, was negative.  That's it."

4　　　　　So this officer did not know anything that

5　preceded this car 8632 following this Jaguar, anything about

6　who might have information that the suspects were armed, why

7　the car was going at a high rate of speed, and he didn't see

8　the crash.

9　　　　　Then we go to Cruiser 8632 was following, at

10　page 28.  "Who was the officer in Cruiser 8632?"

11　　　　　"I don't know at this time, but we can find that

12　out, I'm sure."

13　　　　　I asked, "I would appreciate you providing that

14　information, the identity of the officer in the cruiser."

15　And then that's where we get the objection by Ms. Connolly

16　that this is not relevant, it's beyond the scope.

17　　　　　Then we move to page 29, "How many officers

18　responded to this accident scene?"

19　　　　　Answer, "Several."

20　　　　　Question, "Do you have any idea of several?"

21　　　　　"I didn't count them, but several."

22　　　　　Then I asked --

23　　　　　THE MAGISTRATE JUDGE:  So your concern is

24　obviously that no number was given.

25　　　　　MR. McINTOSH:  Well, my concern is very simple,

1    Your Honor --

2              THE MAGISTRATE JUDGE:  As to that question.

3              MR. McINTOSH:  Well, if he had been able to give

4    me the number, I would have asked for the identity of the

5    officers.

6              THE MAGISTRATE JUDGE:  Very well, you may

7    continue.

8              MR. McINTOSH:  Wait a minute.  I then asked the

9    officer about the suspect who was identified from the

10   fingerprints, and I say, Question, "Was any investigation

11   made as a result of this information?"

12             And then he says, Answer, "By investigation,

13   if you mean any case opened up, no, he was not charged,

14   prosecuted or arrested for this."

15             Question, "Can you tell us why?"

16             Then we get an objection from Ms. Connolly.

17             Then, Answer, "Not being my case and not being

18   involved with hit and run situations," then he talks about

19   how the reports were sent to Hit and Run.

20             Question, "So the Hit and Run section would have

21   been responsible for handling this case?"

22             Witness, "Yes."

23             Question, "What you are telling us, and correct me

24   if I'm wrong, but since the offense was defined as hit and

25   run as opposed to auto theft, it was not your

1    responsibility."

2             "That's correct."

3             "So it was the responsibility of the Hit and Run

4    unit."

5             Answer, "I would assume under my knowledge of the

6    police department, my experience, that it would have been

7    sent to them."

8             Page 42, "The only thing you are aware of is the

9    Jaguar was going through a stop sign at a high rate of

10   speed."

11            Answer, "The only thing I was advised over the

12   radio was that happened, yes."

13            Question, on page 47, "And would any other officer

14   in the 7th District be able to provide any additional

15   information about the circumstances of the accident that

16   occurred on May 13th?"

17            Ms. Connolly, "I'm going to object and instruct

18   him not to answer."

19            Question, "Is Officer Rachlin going to be able to

20   answer that question?"

21            Ms. Connolly, "I stated my objection for the

22   record, I'm instructing him not to answer the question,

23   would any other officer in the 7th-D be able to provide any

24   information about the circumstances of this accident."

25            Page 49, Question, "What you are telling me is

1    that the transcript does not have the information about the

2    identity of the -- the dispatch tape should have the

3    information?"

4         "Yes, sir.  You get a copy of the tape, from the

5    date and time you should be able to identify it by cruiser

6    number, car number, who arrived at the scene, and that would

7    tell you who was there."

8         Now, I've been through the tape, and the tape just

9    does numbers.  I don't have any personal knowledge of who

10   was there.

11        Question, "Would any other officer in the 7th

12   District be able to provide any additional --" page 51 --

13   "information about the circumstances of the accident that

14   occurred on May 13, 2005?"

15        Answer, "To the best of my knowledge, no.  But you

16   would have to call the officers that were on the scene."

17        So I go back, giving you those very questions and

18   answers, to say that this officer was unable to satisfy the

19   subpoena in providing me accurate and complete information

20   about the circumstances of the accident.

21        THE MAGISTRATE JUDGE:  Very well.  Thank you,

22   Mr. McIntosh.

23        Ms. Connolly?  Can you address the basis of your

24   contention that your designee answered the questions to

25   which Mr. McIntosh just referred?

1          MS. CONNOLLY:  No, I cannot, Your Honor.  Because

2     when we took this brief recess, Mr. McIntosh and I went over

3     three pages.  We pointed to page 29 for one question,

4     page 29 and 30 for the second question, and page 49 for the

5     third question.  Yet, he stood up here and referred to

6     several pages that I didn't even get the opportunity to look

7     at and I do believe he's mischaracterizing it, and I think

8     it absolutely has to be in writing..  If Mr. McIntosh wants

9     to take another recess and go through it -- because I was

10    able to tell you all the answers to the three questions,

11    based on the pages we just looked at.

12          And I'm sorry, Your Honor, I don't want to

13    mischaracterize it.  But he stood up here and referred to

14    page 47, page 29, started to talk about my objection in its

15    incompleteness, not going to the part where I allowed him to

16    answer it.  This has to be in writing.  There were not three

17    specific questions.  The three questions we looked at during

18    the break, I was able to look at the pages before and the

19    pages after.  But now that he just came up here, if we look

20    back at the transcripts, he referred to several pages I

21    haven't had the opportunity to look at.  And for --

22          THE MAGISTRATE JUDGE:  Well, if the Court --

23          MS. CONNOLLY:  Sure.

24          THE MAGISTRATE JUDGE:  -- just takes one question

25    by way of an example.

```
 1              MS. CONNOLLY:  Sure.

 2              THE MAGISTRATE JUDGE:  Do you agree that if the

 3    designee is asked as a question, "How many officers were

 4    there," and the answer is "Several," that that's not

 5    responsive?

 6              MS. CONNOLLY:  No.  Because I believe that if you

 7    look at the specific question -- I believe that's on

 8    question 29 -- he says, "How many officers were at the

 9    scene," but then if you go, he answers it.  When I looked at

10    it -- if I can have the transcript back -- he says, "We just

11    need to go through the tape."  And I could answer each --

12    let me just have the Court's indulgence.

13              This is question number 2, where Mr. McIntosh says

14    -- his initial question was we did not reveal the identity

15    of the officers at the scene.  But now it appears that the

16    true question, on page 29, is not what is the identity --

17    here's the question.  The Court's indulgence for one second.

18              He goes through a series of questions.  This is

19    on page 29.  He answered several questions, and the one

20    question was, Question, "How many officers responded to this

21    accident scene?"

22              Answer, "Several."

23              THE MAGISTRATE JUDGE:  Do you agree that "several"

24    is not a number?

25              MS. CONNOLLY:  But --
```

1          THE MAGISTRATE JUDGE:  Would you answer my

2    question, please?

3          MS. CONNOLLY:  Yes.

4          THE MAGISTRATE JUDGE:  You agree that "several"

5    is not a number?

6          MS. CONNOLLY:  Correct.  But there were no

7    follow-up.  Usually there are a follow-up question, "Was

8    there between 5 or 10?  Can you go through who you know was

9    at the scene?"

10          And Officer Rachlin of course would have went

11    through, because he previously testified Officer Battle,

12    Mary Turner, Tiffany Jones.  This is one single question

13    that says, "How many officers responded to the scene," and

14    he said, "Several."  Answer, "Several.  I didn't count them,

15    but several."

16          Next, "Where would I be able to get some

17    information to determine the identities of the officer?"

18          "It would be on the tape."

19          Question, "Does the --

20          THE MAGISTRATE JUDGE:  Have you listened to the

21    tape?

22          MS. CONNOLLY:  Yes.  I've listened to it several

23    times, and Mr. McIntosh -- in fact, we had a discussion

24    about it at Officer Battle as to whether or not to play it.

25          THE MAGISTRATE JUDGE:  What is your proffer with

1  respect to whether or not that information can be determined

2  from the tape?  Mr. McIntosh has said that he cannot.

3  Can you?

4          MS. CONNOLLY:  Yes.  For example.  On the tape,

5  the dispatcher comes up and on the chronology it said the

6  dispatcher's name, Mr. Billingsley.  Then it says Cruiser

7  8632, which had one person in it.  The question was never

8  asked, so there weren't officers.  There was one officer in

9  Cruiser 8632.  Officer Battle arrived at the scene.  Mary

10  Turner did the follow-up investigation.  Tiffany Jones's

11  name was -- sorry, was disclosed.

12          Now, so the question for the Court is, if you

13  listen to the tape and you look at the chronology, it goes

14  minute -- not minute by minute, but it goes a few -- it goes

15  in a series.  And I've invited him --

16          THE MAGISTRATE JUDGE:  But do you agree that that

17  is not a response to the question of how many people were

18  there?

19          MS. CONNOLLY:  I need to go to back to the

20  question.  The question is, "How many officers responded to

21  this accident scene?"

22          Answer, "Several."

23          I don't see how that's an incomplete question

24  without follow-up.  That is a way to pinpoint to one tiny

25  page.  If you were doing a deposition, Your Honor, I'm sure

1    you would have had a question, "Well, several.  Can you tell

2    us any?"

3            "Sure, Your Honor.  I could tell you who I recall.

4    I was there, my partner was there.  Officer Battle was

5    there."

6            THE MAGISTRATE JUDGE:  Well, do you agree that

7    the identity of people that the designee recalls does not

8    satisfy the obligation under Rule 30(b)(6)?

9            MS. CONNOLLY:  Can you state that again?

10           THE MAGISTRATE JUDGE:  Do you agree that the

11   officer's recollection as one of the people on the scene is

12   not sufficient to satisfy the Department's obligation under

13   Rule 30(b)(6).

14           MS. CONNOLLY:  Yes.  I absolutely agree.

15           THE MAGISTRATE JUDGE:  In other words, what the

16   officer recalls is not what is being requested.

17           MS. CONNOLLY:  I absolutely agree with you.  And

18   had Mr. McIntosh asked any other questions to Officer

19   Rachlin -- in fact, we even said, "Do you want to bring

20   Officer Rachlin back?"  I said, "Do you want to bring him

21   back and ask him more questions?  You didn't ask him the

22   questions."  He said, "No, I don't need to bring him back."

23           And Your Honor, one question -- "How many officers

24   responded to the scene?"  Read the rest of the transcript.

25   He did a great job in answering all the questions.  We were

1   surprised he didn't ask any of the questions that he

2   complained Officer Battle couldn't answer.  And I just feel

3   that I'm misleading the Court without having the opportunity

4   to really see these questions in writing.  Because I can

5   stand up here and summarize the questions that he answered

6   that benefit MPD.  Just like the Plaintiff's counsel can.

7   The specific question was not -- Mr. McIntosh stood up here

8   and said to you he could not disclose the identity of the

9   officers at the scene.  That is not true.

10          Next, Hit and Run.  That's page 49.  We looked at

11  it.  Here's the question on page 49.  Again, Mr. McIntosh

12  said Officer Rachlin could not answer the question as to the

13  Hit and Run unit.  There was no question.  If you look at

14  page 49 -- Court's indulgence.  Court's indulgence, it was

15  page 40.  And this is what we looked at during the break.

16  This is the question.  "What you're telling us -- and

17  correct me if I'm wrong -- but since the offense was defined

18  as a hit and run as opposed to auto theft, it was not your

19  responsibility."

20          Answer, "That's correct."

21          Question, "So it was the responsibility of the Hit

22  and Run unit."

23          That's it.  What question is still pending that

24  Officer Rachlin didn't answer?

25          THE MAGISTRATE JUDGE:  Well, do you agree that if

1    Officer Rachlin disavowed any knowledge of what happened in

2    Hit and Run there would have been little point in asking

3    follow-up questions?

4         MS. CONNOLLY:  There was no Hit and Run

5    investigation.  There was none.  There's no person from Hit

6    and Run, there was no investigation, there is no documents.

7    That's why I'm standing before the Court.  I know that

8    information.  Therefore, had there been any follow-up saying

9    -- any follow-ups, any follow-ups whatsoever, then perhaps

10   I'd be able to tell the Court, "I will instruct Officer

11   Rachlin he failed to answer these questions."  But I don't

12   know what questions he failed to answer.

13        And if we want to go back to the toughest one,

14   which was number one, I'd be happy to point out what I said

15   in my objection, that he was competent to testify to the

16   facts relating to Officer 8632, but doesn't know his

17   identity.  So simply not knowing the identity but saying

18   we'll get it to you, he said on a series of pages -- on

19   page 29 -- 26, 27, 28 and 29, he told about what Cruiser

20   8632 reported and did.  So with all respect to the Court, I

21   am willing to work with Plaintiff's counsel but I do believe

22   we produced a competent 30(b)(6) witness.  We even offered,

23   in the alternative, to bring Officer Rachlin back just to

24   polish up any questions.

25        We also said in the alternative, if you have

1  specific interrogatories -- that's what happened in the

2  case.  In the Alexander case.  They said, "Okay, put your

3  questions in writing."  They did not ask them to bring

4  another person.

5       And we just ask the Court to understand the

6  District's position, the Metropolitan Police Department.

7  We can go on forever and have to produce all these

8  witnesses, but I'm not even sure what it is that we've

9  failed to comply with of the 30(b)(6), so with respect,

10  thank you.

11       THE MAGISTRATE JUDGE:  Very well.  Thank you,

12  Ms. Connolly.

13       Mr. McIntosh, I'll hear a brief reply if you wish.

14       MR. McINTOSH:  Your Honor, this has been going on

15  since 2005.  The language in the subpoena is very, very

16  clear, "Give me all the information this entity has about

17  the circumstances of the accident."  These depositions have

18  indicated that Officer Battle did not witness the accident.

19  She got her information from somebody else.  She told me,

20  off the record, maybe Officer Rachlin could provide

21  additional information.

22       When we have Officer Rachlin, he did not see the

23  accident.  Another vehicle saw that accident.  Another

24  vehicle was following.  There were other officers at the

25  scene when he got there, who have information about that,

1    but they won't -- he can't identify those officers.  He says

2    it's possible for the police department to identify who was

3    in 8632 and who the other officers were, but that is all the

4    information that I get.  I mean, they're playing games with

5    this.  I mean, if they were going to truly honor your order

6    and Rule 30(b)(6), they would have somebody go through this

7    -- let's take this Cruiser 410.  Cruiser 411.  How am I

8    going to determine the identity of those specific officers?

9          I just need to know all the officers who were at

10    the scene, who were involved in the -- who were at the

11    scene.  I need to have the opportunity to choose to depose

12    them for their knowledge.  I certainly need to depose the

13    individual cruiser 6382, whatever it is, and I need the

14    right to talk to the Hit and Run people to find out what

15    they did, if anything, after that.  Then I could have full

16    knowledge about the theft and the circumstances of the

17    accident, and again and again and again the City has refused

18    to comply with the subpoena and your order.

19          THE MAGISTRATE JUDGE:  The Court, having listened

20    very carefully to the proffers and arguments of counsel and

21    to the portions of the transcript to which the Court's

22    attention was directed, finds that non-party Metropolitan

23    Police Department has failed to fully comply with the

24    Court's order compelling discovery.  The Court will grant

25    the District an additional week; that is, until next

1  Thursday, April 24th, to produce a designee who is able to

2  answer the questions that are within the scope of the

3  subpoena.

4         By way of illustration the Court will return to

5  the question, phrased in summary fashion: How many people

6  were at the scene?  How many officers were at the scene?

7  Now, that is not a quote, that is a paraphrase of the

8  question.  The answer, quote, "Several," close quote, is

9  simply not responsive.  And the mere fact that a lawyer

10  taking a deposition may, in some circumstances, have opted

11  to follow up, that does not render the answer any more

12  responsive than it is now, when there was no follow-up.

13         The practical difficulty is obvious; that is,

14  "several" is not a number, so the answer was not responsive.

15  And all further inquiry regarding the names of the several

16  people would simply not satisfy the requirements of Rule

17  30(b)(6), in that Plaintiff's counsel would have no way to

18  determine what the District's answer is to the question.

19  In other words, some of the officers would have been

20  identified but presumably not all of them, since the

21  designee did not know how many were present.

22         The Court will further order that by Monday,

23  April 28th -- perhaps I'll make that Tuesday, April 29th,

24  the parties jointly file a status report regarding what the

25  Court hopes will be the completion of the 30(b)(6)

1    deposition.  If there is still a dispute regarding whether

2    or not the designee was able to answer all the questions

3    within the scope of the notice, then you may address that

4    there.

5         The Court will award Plaintiff his costs -- or,

6    Plaintiff her costs of appearing here today and order that

7    said costs be paid by May 30th.

8         Now, is there anything further in this matter this

9    afternoon?  Mr. McIntosh?

10        MR. McINTOSH:  No, Your Honor.

11        THE MAGISTRATE JUDGE:  Thank you.  Ms. Connolly?

12        MS. CONNOLLY:  Your Honor, just so I understand

13   the dates (inaudible) did you say Thursday, April 24th?

14        THE MAGISTRATE JUDGE:  Do you prefer next Friday?

15   Does that give everyone more time?

16        MS. CONNOLLY:  I just want to know is it to

17   produce this designee or identify (inaudible)?

18        THE MAGISTRATE JUDGE:  To produce a designee.  It

19   is not within my province to name the designee.  That is up

20   to the District -- excuse me, up to the Metropolitan Police

21   Department.

22        MS. CONNOLLY:  I'm sorry.  I just meant whether or

23   not your order was to have the deposition --

24        THE MAGISTRATE JUDGE:  To have the deposition.

25        MS. CONNOLLY:  By April 24th.

1              THE MAGISTRATE JUDGE:  Yes.

2              MS. CONNOLLY:  Okay.  And then the next date --

3              THE MAGISTRATE JUDGE:  Do you prefer next Friday?

4    I don't know what your schedule is or whether either of you

5    is in trial or --

6              MS. CONNOLLY:  I just think that gives me very,

7    very little time to try to really resolve this, and I --

8    but I will follow whatever the Court advises.  I have to

9    coordinate _____ Metropolitan Police Department.

10             THE MAGISTRATE JUDGE:  Is Monday the 28th more

11   realistic?

12             MS. CONNOLLY:  If the Court would allow me to do

13   that, I'd appreciate it additional time.

14             THE MAGISTRATE JUDGE:  Very well.  The Court will

15   extend the date to Monday, April 28th, and I will order that

16   by Friday, May 2nd, you file your status report -- well, the

17   following week, Monday, May 5th.  So complete the deposition

18   by April 28th, file the status report by May 5th.

19             MS. CONNOLLY:  Thank you, Your Honor.

20             THE MAGISTRATE JUDGE:  Very well.  Thank you very

21   much.  You may all be excused.

22             (Whereupon, the proceedings were concluded.)

23

UNITED STATES OF AMERICA )
                         )  Civil Action No. 07-0883
DISTRICT OF COLUMBIA     )

      I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States District Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

_____
      PAUL R. CUTLER

      I do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

_____
      BONNIE FURLONG

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA


----------------------X

                    :

JOAN CLARK,          :

                    :

       Plaintiff,  :

                    : Case No.

   v.              : 1:07-cv-00883-RJL

                    :

TIDEWATER MACK, INC., :

et al.,            :

                    :

       Defendants. :

                    :

----------------------X


Washington, D.C.

April 15, 2008

Deposition of:

     OFFICER KEVIN RACHLIN,

called for oral examination by counsel for

Plaintiff, pursuant to notice, at the Office

of the Attorney General, 441 4th Street, N.W.,

6th Floor South, Washington, D.C., before

Zev V. Feder, CSR, a Notary Public in and for

the District of Columbia, beginning at 2:05

p.m., when were present on behalf of the

respective parties:

Page 26

1   specifically where I was or what I did.
2       Q.  How would you like to tell us,
3   sir?
4       A.  I am an auto theft investigator.
5   Me and my partner are out in the car on
6   patrol.  We happened to be a few blocks from
7   this area when the officer came over the radio
8   advising us that the Jaguar, or a car, silver
9   car, silver blue car, had passed a stop sign
10  at a high rate of speed and the suspects might
11  be armed that are in the vehicle.
12      As we go into the area another
13  cruiser comes over the radio and says that the
14  vehicle has been involved in a crash.  He
15  needs ambulance and this is where the suspects
16  are running.
17      At that point my partner got out
18  on foot.  I stayed in the car to come around
19  from a different angle.  The search for us was
20  negative.
21      That's it.
22      Q.  You stated that somebody gave you

Page 27

1   information that the car had passed a stop
2   sign at a high rate of speed.  Who gave you
3   that information?
4       A.  It was broadcast over the radio.
5       Q.  Was this on a tactical tape --
6       A.  No.
7       Q.  -- or a dispatch tape?
8       A.  Just regular channel.
9       Q.  Do you have any idea as to length
10  of time that passed between you getting the
11  information that this car had passed a stop
12  sign and the accident?
13      A.  I don't have that specifically,
14  no.
15      Q.  If you look at the event
16  chronology, it identifies -- maybe you can
17  find this before I can -- Cruiser 8632 was
18  following this car.
19      MS. CONNOLLY:  Objection as to
20  foundation.
21      You can go ahead and look if you
22  can.

Page 28

1       THE WITNESS:  Can I answer?
2       MS. CONNOLLY:  If you understand
3   the question, yes.
4       THE WITNESS:  Yes, I do.  That's
5   what I am saying.
6       BY MR. McINTOSH:
7       Q.  Go ahead.
8       A.  First of all, that officer was not
9   following the vehicle.  That is a mistake
10  right there by you.  Second of all, he has
11  seen it run the stop sign.  He was there.
12  Went by at a high rate of speed.  He gave us a
13  lookout.  And that's it.
14      Q.  Who was the officer in Cruiser
15  8632?
16      A.  I don't know at this time but we
17  can find that out, I am sure.
18      Q.  I would appreciate you providing
19  that information, the identity of the officer
20  in Cruiser 8632.
21      MS. CONNOLLY:  There is no
22  objection at this time.  However, I would just

Page 29

1   like the record to note that I believe Officer
2   Rachlin can answer questions relevant to
3   Cruiser 8632 and that the identity of the
4   person in the cruiser is beyond the scope of
5   this subpoena.
6       BY MR. McINTOSH:
7       Q.  Did you arrive at the accident
8   scene?
9       A.  Yes.
10      Q.  At what streets was this accident
11  location?
12      A.  It was between Chesapeake and 9th
13  Street on Southern Avenue.
14      Q.  Were the cars in the intersection
15  or the cars on Chesapeake Street or 9th
16  Street?  Where were they located?
17      A.  No, they were on Southern Avenue.
18      Q.  How many officers responded to
19  this accident scene?
20      A.  Several.
21      Q.  Do you have any idea?
22      A.  Several.  I didn't count them but

Page 42

1  about directly by that officer that came over
2  the radio, as far as I know, no.
3        BY MR. McINTOSH:
4        Q.   So you don't have any information
5  about any traffic report or traffic violation
6  cited by this Jaguar prior to the accident?
7        **A.   No, I don't.**
8        Q.   So the only thing you saw was just
9  the Jaguar -- I am sorry, I don't want to
10 mischaracterize your testimony.  The only
11 thing you are aware of is the Jaguar going
12 through a stop sign at a high rate of speed?
13       MS. CONNOLLY:  Objection.
14       You can answer if you can.
15       THE WITNESS:  The only thing I was
16 advised over the radio was that happened, yes.
17       BY MR. McINTOSH:
18       Q.   When you talk about the stop sign,
19 Officer Rachlin, how far was the stop sign
20 from 9th and Chesapeake Avenue, Southeast?
21       MS. CONNOLLY:  Objection.  Calls
22 for speculation.  Beyond the scope.

Page 43

1        You can answer if you can.
2        THE WITNESS:  There is no 9th and
3  Chesapeake.
4        BY MR. McINTOSH:
5        Q.   Let's just do it this way so we
6  can get through this.
7        **A.   But there is no 9th and**
8  **Chesapeake.**
9        Q.   I could go to the PD-10 to --
10       **A.   That's fine.**
11       Q.   Do you want to do that?
12       **A.   Yes, that would help.**
13       (Pause).
14       (Discussion off the record.)
15       **BY MR. McINTOSH:**
16       Q.   I may have misspoke.  It was my
17 recollection you said something about 9th and
18 Chesapeake.
19       **A.   No, when you asked me specifically**
20 **where the accident occurred, I told you**
21 **between Chesapeake and 9th, two different**
22 **streets, and that it happened on Southern**

Page 44

1  Avenue.
2        Q.   This accident report cites HR
3  Drive and Southern Avenue.
4        **A.   Yes, HR Drive is really an alley.**
5  **It asks for specifics.  But if you were,**
6  **generally speaking, on the radio or asking for**
7  **an ambulance, you would just say between**
8  **Chesapeake and 9th because everyone knows the**
9  **generalities.**
10       Q.   I will go back to my question.
11 What was the distance from that stop sign you
12 referred to and the accident location?
13       MS. CONNOLLY:  Objection.
14 Mischaracterization.
15       You can answer if you can.
16       THE WITNESS:  You want it in feet,
17 blocks?
18       BY MR. McINTOSH:
19       Q.   How best you want to do it.
20       **A.   I would say probably two to three**
21 **blocks away.**
22       Q.   Do you have any idea of when the

Page 45

1  following cruiser started following this
2  Jaguar?
3        MS. CONNOLLY:  Objection.
4  Confusing.
5        You can answer if you can.
6        THE WITNESS:  Well, I would need a
7  clarification.  I was out there on the street
8  and, the way it came over the radio, nobody
9  was following the vehicle.
10       That also comes to police
11 terminology versus citizen terminology.
12       BY MR. McINTOSH:
13       Q.   I am just trying to assess some
14 facts.  I am not trying to --
15       **A.   It is my job to educate the**
16 **situation.**
17       Q.   I appreciate it.
18       The FIT unit, that is short for
19 Force Investigation Team?
20       MS. CONNOLLY:  Objection to any
21 questions regarding FIT as beyond the scope of
22 the subpoena.

Page 46

1      You can answer if you can.
2      THE WITNESS:  Force Investigation
3  Team, yes, sir.
4      BY MR. McINTOSH:
5      Q.    Would it be fair to say, again,
6  that you did not generate any reports as a
7  result of this accident?
8      A.    Yes, sir.
9      Q.    And that all the reports that you
10  are aware of are those that we have gone over
11  earlier?
12      A.    Yes, sir.
13      Q.    So these reports are all the
14  records and documents relating to any
15  investigation of the stolen car that was
16  involved in the accident on May 13, 2005?
17      A.    No.
18      Q.    Are there others?
19      A.    There was no investigation of the
20  stolen auto.
21      Q.    So again, and I apologize for
22  repeating --

Page 47

1      A.    That's fine.
2      Q.    So there are no other reports?
3      A.    No, no reports for investigation
4  of a stolen auto.
5      Q.    Are there any other records or
6  reports that were generated relating to the
7  accident that occurred on May 13, 2005?
8      A.    No, sir.
9      Q.    No?
10      A.    No.
11      Q.    And would any other officer in the
12  7th District be able to provide any additional
13  information about the circumstances of the
14  accident that occurred on May 13, 2005?
15      MS. CONNOLLY:  I am going to
16  object and instruct you not to answer.
17      Let's go off the record for a
18  second.
19      (Discussion off the record.)
20      MR. McINTOSH:  Is Officer Rachlin
21  going to be able to answer that question?
22      MS. CONNOLLY:  I stated my

Page 48

1  objection for the record that I am instructing
2  him not to answer the question, would any
3  other officer in the 7th District be able to
4  provide any additional information about the
5  circumstances of the accident that occurred on
6  May 13, 2005.
7      If there is another question that
8  you meant to ask that is different, or you
9  would like to rephrase it, I don't object to
10  your rephrasing it.  But as to that specific
11  question, I am going to instruct him not to
12  answer.
13      BY MR. McINTOSH:
14      Q.    Officer Rachlin, I was trying to
15  reach a conclusion here.  I will kind of
16  restate a question.
17      Directing your attention to
18  May 13, 2005, and the PD-10, the PD-10
19  indicates the approximate time of the accident
20  as 1355.  Like five minutes to 2:00 p.m.
21      During that period of time, do you
22  know how many 7D officers were on patrol on

Page 49

1  that date?
2      A.    It would be easy to find out but I
3  don't have that information with me, no.
4      Q.    Do you know how many officers
5  arrived at the scene of the accident on that
6  date?
7      A.    You already asked that question.
8  I told you we would have to go to the tape,
9  because it is not on the chronological
10  paperwork and I do not have that information
11  available.  We would have to go to the tape.
12      Q.    What you are telling me is that
13  the transcript does not have that information
14  but a dispatch tape should have that
15  information?
16      A.    Yes, sir.
17      If you have a copy of the tape
18  from that date and time, you should be able to
19  identify it by cruiser number, car number who
20  arrived on the scene, and that would tell you
21  who was there.
22      Q.    Going back to the information you



Page 50

1   received about the Jaguar passing the stop
2   sign at a high rate of speed, and then the
3   accident, do you have any idea as to length of
4   time between the Jaguar going through the stop
5   sign and the accident?
6       MS. CONNOLLY:  Objection.  Beyond
7   the scope.  Calls for speculation.
8       You can answer if you can.
9       THE WITNESS:  I would have to
10  listen to the tape to hear the dispatcher
11  voicing the times, and that would not be a
12  hundred percent accurate because, obviously,
13  there would be a delay.  A guess or
14  guesstimate, roughly, from what I recall,
15  would be probably anywhere from a minute to a
16  minute and-a-half.
17      BY MR. McINTOSH:
18  Q.   Is there any other information you
19  would like to provide in response to this
20  deposition?
21      MS. CONNOLLY:  I will object and
22  instruct you not to answer that question.

Page 51

1       Actually, let me take one moment,
2   please.  (Pause.)
3       I just want to say, it is my
4   objection and I strike the part that I object
5   and instruct you not to answer.  I object for
6   the record.
7       You can answer if you can.
8       Do you want him to read back the
9   question?
10      THE WITNESS:  Yes, say it again.
11      BY MR. McINTOSH:
12  Q.   Would any other officer in the 7th
13  District be able to provide any additional
14  information about the circumstances of the
15  accident that occurred on May 13, 2005?
16  **A.   To the best of my knowledge, no.**
17  **But you would have to call the officers that**
18  **were on the scene.**
19  Q.   And the only way that I could
20  determine officers on the scene is go through
21  the tape?
22  **A.   Yes, sir.**

Page 52

1       MR. McINTOSH:  I have no further
2   questions at this time.
3       MS. CONNOLLY:  No questions,
4   either.  But we prefer to review it and not
5   waive signature.
6       (Discussion off the record.)
7       (Whereupon, at 3:15 p.m., the
8   deposition was concluded.)
9                + + +

Page 53

1
2       CERTIFICATE FOR READING AND SIGNING
3
4       I hereby certify that I have read
5   and examined the within transcript and the
6   same is a true and accurate record of the
7   testimony given by me.
8       Any corrections I have listed on
9   the separate errata sheet enclosed, indicating
10  the page and line number of each correction.
11
12
13
14
14  _____
15  Officer Kevin Rachlin
15
16
16  _____
17  Date
18
19
20
21
22

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x
                              :
In the Matter of:             :
                              :
JOAN CLARK,                   :
                              :
     Plaintiff,               :
                              :
          vs.                 :   Civil Action No. 07-0883
                              :
TIDEWATER MACK, INC., et al., :
                              :
     Defendants.              :
                              :   Washington, D.C.
- - - - - - - - - - - - - - x     February 27, 2008

TRANSCRIPT OF CONTINUATION OF HEARING ON
MOTION TO COMPEL AND FOR SANCTIONS
BEFORE THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        ERNEST W. McINTOSH, JR., ESQ.

For the Defendants:       ANAND V. RAMANA, ESQ.
                          STEPHEN A. HORVATH, ESQ.
                          TIMOTHY E. FIZER, ESQ.

For Non-Party
 District of Columbia:    CAROL A. CONNOLLY, ESQ.
                          BRENDA WILMORE, ESQ.

Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
M2441V-1/bf

**P R O C E E D I N G S**

1
2          THE CLERK:  Civil Case Number 07-883, this is in
3   the matter of Joan Clark versus Tidewater Mack, et al.  And
4   for Ms. Joan Clark, present in the courtroom is Ernest W.
5   McIntosh, Jr.  And for the non-party, Metropolitan Police
6   Department, present in the courtroom is Carol Connolly and
7   Brenda Wilmore (inaudible).
8          THE MAGISTRATE JUDGE:  I believe we will call it
9   the continuation of the hearing with respect to the
10  Plaintiff's motion to compel, and for sanctions.  The motion
11  which bears document number 14.  Now, good afternoon to all
12  of you.
13          The Court was initially under the impression that
14  the three of you had been able to resolve the rather limited
15  issue which is pending for my consideration, and that is the
16  manner in which the Metropolitan Police Department will
17  comply with the notice of 30(b)(6) deposition.  I know of no
18  objection to the deposition which has been lodged, and my
19  understanding of your dispute is that it is limited to --
20  perhaps I should state the identity of the person or the
21  identities of the people that the Metropolitan Police
22  Department intends to designate.  Am I correct?
23          Mr. McIntosh?  Is that the full extent of the
24  issue that remains to be determined by the Court?
25          MR. McINTOSH:  I'm just trying to give you an

1    executive summary, Your Honor.  Okay.

2            THE MAGISTRATE JUDGE:  Very well.  Good afternoon.

3    You may proceed.

4            MR. McINTOSH:  Good afternoon.  The 30(b)(6) --

5    that was a deposition along with a subpoena -- said that we

6    need a 30(b)(6) witness who can give us information about

7    the facts and circumstances of the theft of the car, because

8    there's a legal claim there, and also the circumstances of

9    the accident.  All right.  Per my motion when the attorney-

10   general designated the officer who wrote the police report -

11   - I mean, and that made sense, it was logical -- that

12   officer could not answer those questions.

13           So we came back and Ms. Connolly and I --

14   I thought we had agreed that we would resolve it and that

15   I could have one or two more depositions.  And I stated --

16           THE MAGISTRATE JUDGE:  When you say one or two

17   more depositions, do you mean one or two more deponents with

18   respect to the same 30(b)(6) deposition?

19           MR. McINTOSH:  Yes.  Because under the Alexander

20   case, Your Honor, that's necessary.  Alexander, McKissick.

21   Because the witness who testified could not answer those

22   questions about the facts or circumstances of the theft and

23   the accident.  But I did learn, during that deposition and

24   pursuant to the material which was produced, that there is

25   an auto theft officer who may have more information about

1    the circumstances of theft and the accident, and certainly

2    that the car, that the stolen car was pursued by Special

3    Operations Division cruisers, Number 8632, and I wanted to

4    depose those officers.  I felt that that would conclude the

5    matter and we could dismiss the complaint against D.C.  At

6    this --

7            THE MAGISTRATE JUDGE:  Now, let me interrupt you

8    just one moment.  Do you characterize those further

9    depositions as a part of the same 30(b)(6) deposition, or --

10           MR. McINTOSH:  Exactly, a hundred percent.

11   Because again, under the Alexander case and McKissick case,

12   the corporation needs to give the deposing party his total

13   knowledge.  And since the initial officer did not have that,

14   through investigation and consultation with Ms. Connolly,

15   I believe that these three people would have it.  So I

16   thought that I'd take these three depositions; that would

17   be it.

18           I spoke to Ms. Connolly's supervisor today and

19   then she spoke to Ms. Connolly, and I think -- and

20   Ms. Connolly can jump in here at any time -- I think that

21   the District's position now is that I can only have the

22   testimony of one 30(b)(6) witness, and then I've got to

23   dismiss the case.  Well, I can't do that because that does

24   not comply with the legal standards for this deposition, and

25   I can't do that because I have an obligation to my client to

1    develop the facts for the legal theories that we want to
2    pursue, so that she would have a remedy.
3              THE MAGISTRATE JUDGE:  Very well.  Thank you,
4    Mr. McIntosh.
5              Ms. Connolly or Ms. Wilmore?  Ms. Connolly.
6              MS. CONNOLLY:  Good afternoon, Your Honor.
7              THE MAGISTRATE JUDGE:  Good afternoon.
8              MS. CONNOLLY:  First, I'd like to just refresh the
9    Court's recollection as to some facts.
10             On June 25th, a subpoena was served.  The District
11   of Columbia non-party Metropolitan Police Department
12   produced a 30(b)(6) deponent two months and two days later.
13   That was on August 28th.  I was present at that deposition.
14   Officer Laverne Battle was our designee.  She was the
15   officer who arrived at the accident and produced the PD-10
16   investigation report.
17             If I may continue.  We showed up at a hearing
18   December 11th, 2007.  At that hearing on December 11th,
19   2007, we worked together with Plaintiff's counsel to try and
20   resolve the issue.  We did not agree that Officer Battle was
21   not competent pursuant to the rule.  We believe she was
22   fully competent and laid out our grounds in our opposition.
23   However, in light of trying --
24             THE MAGISTRATE JUDGE:  Do you concede that Officer
25   Battle was not able to --

1        MS. CONNOLLY:  No.

2        THE MAGISTRATE JUDGE:  -- answer all of the

3  questions within the scope of the topics identified in the

4  notice of deposition?

5        MS. CONNOLLY:  No.  And we believe we set forth,

6  in our opposition, the grounds why she was not -- she was

7  competent.  And I can argue those grounds.

8        However, in light of trying to resolve the case,

9  at the end of Officer Battle's deposition, off the record,

10  the matter is complete, Officer Battle suggested to

11  Plaintiff's counsel, "You may want to ask Officer Rachlin

12  these questions.  He may have additional documents or

13  further information."  This was a courtesy to Plaintiff's

14  counsel after the deposition was complete.  So we agreed --

15        THE MAGISTRATE JUDGE:  Well, does that not suggest

16  -- whether or not that bit of dialogue was on the record or

17  off the record, does that not suggest that your designee,

18  Officer Battle, acknowledged that she was not able to

19  respond to all of the concerns?

20        MS. CONNOLLY:  No, Your Honor.  I have the

21  deposition transcript, so I am one hundred percent sure it

22  was never addressed on the record.  And I can produce that -

23        THE MAGISTRATE JUDGE:  I didn't ask whether that's

24  what she said.  I asked whether, by suggesting that someone

25  else had further information on the same topic, that she

1    conceded that she, as the designee, did not have the full

2    extent of the information which pertained to the topics.

3            MS. CONNOLLY:  No.  I believe that her --

4            THE MAGISTRATE JUDGE:  Well, what did it mean,

5    then?

6            MS. CONNOLLY:  I believe that her comment was in

7    the spirit of Mr. McIntosh's concern that he just wasn't

8    satisfied after the deposition was over that MPD produced

9    everything, and myself as well as Officer Battle said,

10   "We have nothing else.  The only other person I talked about

11   was Officer Rachlin."  So in the spirit of this Court trying

12   to get us to resolve it, we offered Officer Rachlin.  On

13   December 11th, 2007, we stood in your courtroom and we said

14   to Plaintiff's counsel, "We don't agree with your position,

15   but we will produce one additional witness."  That was

16   December 11th.  And if I can have the Court's -- if I can

17   just put this on the record for the Court.

18           Sunday, January 13th, the day before our Court

19   hearing of January 14th, was the first time Plaintiff's

20   counsel had contacted me from the time we left the

21   courtroom.  I happened to be in the office on a Sunday

22   evening.  I answered the phone.  He asked for a continuance.

23   We politely, and tried to resolve the matter, agreed.  We

24   continued the matter again till February 11th.  At that

25   time, Monday the day before, Plaintiff's counsel asked for a

1    continuance.  We agreed.

2        In the interim, after the first phone call from

3    Plaintiff's counsel, I sent him an e-mail.  In that e-mail

4    I specifically said, "Pursuant to our conversation, MPD has

5    agreed to produce one additional witness."  I go on to say

6    in the e-mail, "I will need as much time as possible to

7    coordinate a deposition date.  I start my trial on January

8    22nd."  I don't hear any response, never identified any

9    person.

10        Then we move to February 11th.  The day before,

11    he asked for another continuance.

12        THE MAGISTRATE JUDGE:  Well, let me interrupt you

13    again.

14        MS. CONNOLLY:  Sure.

15        THE MAGISTRATE JUDGE:  You would not expect that

16    a party requesting a 30(b)(6) deposition would identify a

17    person, would you?  Since the party's obligation under the

18    Rules is to identify topics that the designee must be

19    prepared to address.

20        MS. CONNOLLY:  I agree with the Court one hundred

21    percent.  However, at our December 11th, 2007, conference in

22    this courtroom, we talked about the only persons that were

23    involved.  We went through the documents we produced and we

24    said, "Here's Officer Rachlin's name that appears on one of

25    the documents.  Here's Mary Turner's name that appears on

1   one of the documents."  We've complied.  We don't know any

2   more information surrounding the theft of the vehicle.  It

3   happened in Manassas, Virginia.

4         So we took our opposition, we took our exhibits,

5   and in light of trying to work together we said, "We do

6   believe Officer Battle complied with it.  However, if you

7   want Officer Rachlin -- " in fact, we even called Officer

8   Rachlin and Officer Rachlin said, "I don't have any

9   additional information, no documents, but I'm happy to be

10  deposed."

11        And Mary Turner was also one of the investigators

12  that was listed, because Plaintiff complains that Officer

13  Battle was not competent because she showed up at the

14  accident and had no further -- after the accident with the

15  PD-10, she did no further of the follow-up investigation.

16  And that's not what the law requires.  The 30(b)(6)

17  requirement, if I can have the Court's indulgence, is

18  "the person shall testify as to matters known or reasonably

19  available."  We agree, Plaintiff cites that she could not

20  answer the question, how the car was stolen.  That's on

21  page 4 of his brief.  We agree, because we don't know how

22  the car was stolen.  It was stolen out of Manassas,

23  Virginia.

24        I sent him a correspondence letter, but just to

25  get back to the issue before the Court, is that then,

1  February 26th was the first time -- yesterday -- that I

2  received a phone call.  I picked up the phone call from

3  Plaintiff's counsel and he said, "I want to designate three

4  people."  That he would like to depose three people.  And I

5  just have to stand by my position that, as of December 11th,

6  I was willing to work with him, produce another person, but

7  I just feel that three people does not -- that burden is

8  unreasonable to place on the District of Columbia.

9          One other issue that I'd like to address to the

10  Court --

11          THE MAGISTRATE JUDGE:  Is your sole objection on

12  the ground of burdensomeness?

13          MS. CONNOLLY:  No.  My objection is based on --

14  if you look at the language of Plaintiff's subpoena, we have

15  fully complied and produced a person that is competent and

16  could answer his questions, and that was Officer Battle.

17          THE MAGISTRATE JUDGE:  To the extent that the

18  Plaintiff now asked to take depositions -- and I will hear

19  Mr. McIntosh's response to this question in a moment, but

20  since you're still at the podium I will ask you -- you agree

21  that there is no impediment to the Plaintiff seeking to take

22  the deposition of the three individuals as non-30(b)(6)

23  depositions, do you?

24          MS. CONNOLLY:  We are not a party to --

25          THE MAGISTRATE JUDGE:  The Court is aware of that.

1          MS. CONNOLLY:  -- this action.  I'm sorry.

2          THE MAGISTRATE JUDGE:  My question is whether you

3    recognize that there is no impediment to the Plaintiff

4    taking the depositions of the three individuals.

5          MS. CONNOLLY:  I ask for the Court's indulgence

6    because I believe that that's what this whole motion and

7    opposition was about.  If they are non-parties to this

8    action, I don't understand how Plaintiff would be allowed to

9    take their deposition.  As a non-party, not relevant, what

10   would he suggest in his subpoena that he's deposing them

11   for?  He would want to depose every single person from the

12   Metropolitan Police Department from the beginning to the end

13   who's not a party to get as much information as he can?

14         And there's something I have to tell the Court.

15   On January 30th, Plaintiff's counsel contacted me and I said

16   to him, "Okay, we're ready, let's set up the deposition."

17         And he said, "Well, I have a question I need the

18   answer to.  And that question is, can you find out from the

19   Metropolitan Police Department if the keys were left in the

20   vehicle."

21         And I said, "Sure," in light of trying to work

22   together and resolve the issue.  I said, "But can you tell

23   me the relevancy?"

24         And he said, "Yes, I can name the driver --"

25   sorry, "I can name the owner of the vehicle as a defendant

1    if the owner was negligent."

2           I said, "Look," and to the best of my

3    recollection, I didn't believe that this was relevant to the

4    District of Columbia or our responsibility under a 30(b)(6),

5    but I went back and checked with our general counsel, we

6    reproduced the photos that we already produced that showed a

7    key in the ignition.  Then we also, in light of trying to

8    resolve the case, gave him the original photos in case he

9    wanted his experts to enlarge those photos to bring a new

10   defendant.

11          I honestly believe, Your Honor, that Plaintiff is

12   trying to depose more people from the District of Columbia

13   so that he can try to add more defendants.  That's not the

14   role of a 30(b)(6) subpoena deposition.  The role of a

15   30(b)(6) is to designate a person who has matters known or

16   reasonably available.  And in our opposition we say, we

17   agree we do not know the circumstances surrounding the

18   theft.  It was stolen out of Manassas.  And my understanding

19   is Plaintiff's counsel has now subpoenaed the Manassas

20   police department to try to gain more information and is

21   expecting some documents from them.  So in sum --

22          THE MAGISTRATE JUDGE:  But you have no interest

23   in that, I assume.

24          MS. CONNOLLY:  The District?  I'm sorry.

25          THE MAGISTRATE JUDGE:  The District has no

1    interest in what the City of Manassas does or does not do

2    with respect to Mr. McIntosh's subpoena.

3         MS. CONNOLLY:  Absolutely no interest.  We are not

4    a party.  What we would like this Court to do is the same

5    thing we proposed to Plaintiff, is we will allow him to

6    depose Officer Rachlin, but we believe he should dismiss

7    this case that's before the Court.  Instead -- and he can't

8    even tell us that after those two people he would be

9    finished.  So this could go on for months.  We're not a

10   party, we complied with it, and we believe the grounds

11   stated in our opposition are clear and, under the case law,

12   we've complied.  We can't produce someone if we don't know

13   the circumstances of the theft.

14        And I thank you and I hope I was clear to the

15   Court.

16        THE MAGISTRATE JUDGE:  Thank you, Ms. Connolly.

17        MR. McINTOSH:  In order to economize time I will

18   not try to go tit for tat.  It's amazing.  I've made

19   requests of the D.C. police department as early as 2005.

20   Manassas, the subpoenas were served, a person called me,

21   read to me from the police report, said they would put it in

22   the mail and I could talk to the detective, you know, as

23   soon as I got the paperwork.  That's like two days.  I've

24   requested this information from the MPD since 2005 and here

25   I am, wasting the Court's time because of their

1    incalcitrance.

2           Now, relevance.  There are two legal theories.

3           THE MAGISTRATE JUDGE:  Well, you need not address

4    the relevance issue, Mr. McIntosh.  The Court's only

5    question is what is the basis of your argument that you may

6    identify the names of the individuals you wish to depose as

7    part of your 30(b)(6) deposition?

8           MR. McINTOSH:  All right, Your Honor.  Because

9    the deposition said I want the corporation's, the police

10   department's, total knowledge about the fact and

11   circumstances of the theft and the facts and circumstances

12   leading up to the accident.  And at page 4 of my motion, I

13   have entered Officer Battle's testimony where she could not

14   answer as to how the car was stolen and, when I asked her

15   about the facts leading up to the accident, I asked did she

16   actually observe that, she said, "No."

17          I said, "How did you get this information?"

18          She said, "Once I got to the scene, I can't recall

19   who I spoke to.  I know some of the information came from

20   the dispatcher.  I say _____ accidents have been some

21   time ago, I've had several accidents since then."

22          So she could not give me any information of the

23   facts leading up to the accident, but going through it she

24   did identify the police car which was pursuing this vehicle

25   that crashed in and made my lady a paraplegic.  She did

1   that.  And she did say that Officer Rachlin, the auto theft

2   officer, would possibly have more information.  So facts and

3   circumstances of the theft, facts and circumstances of the

4   accident, she didn't have that information.

5        And again, under the Alexander case, on page 7,

6   they needed to designate a deponent who was knowledgeable

7   on the subject matter identified as a area of inquiry,

8   designated more than one deponent if it is necessary to

9   convey all the information requested in the subpoena.  I

10  don't understand this, the D.C. police department is not a

11  defendant at this time but, unlike the Manassas police

12  department, they're just dragging me into intractable

13  litigation over this.

14       I don't want to depose everybody in the police

15  department.  I just said let us depose Officer Rachlin, who

16  would have information about the theft of the car, possibly;

17  information about the facts leading up to the accident,

18  possibly; and the officers who pursued this car.  So that I

19  could exhaust those facts as a duty to my client and then

20  preserving her rights in building the case.  That's all I'm

21  seeking to do.

22       THE MAGISTRATE JUDGE:  Was Officer Battle able to

23  answer your questions regarding the pursuit of the stolen

24  car by an officer of the SOD?

25       MS. CONNOLLY:  No, she was not.  No, she was not.

1   Because she said she was not at the scene.  She was just

2   designated by somebody in command or control to go take the

3   accident report.  And she got her facts from talking to

4   other officers at the scene.  My experts have told me I need

5   to depose the watch commander, the shift commander, all the

6   officers who was there, but I don't want to do that.  I

7   think that by parsing this down to these three people, that

8   would give me sufficient information so that she could go

9   ahead with her case.  And I just do not under --

10          THE MAGISTRATE JUDGE:  Now, who are the other two

11   in addition to Rachlin?

12          MS. CONNOLLY:  Those would be the officers who

13   were in cruiser number 8632.  They would probably be

14   30(b)(6) witnesses under the Alexander and McKissick case,

15   because they're going to be able to provide information

16   requested by the subpoena that Officer Battle could not give

17   me.

18          THE MAGISTRATE JUDGE:  Do you agree that it is up

19   to the party on whom the subpoena is served, or the notice

20   of deposition is served, to determine who will be offered as

21   the deponent?

22          MR. McINTOSH:  That is up to them.  That is up to

23   them.  And I thought -- but again, under the case law, in

24   order to forthrightly and reasonably reply to the subpoena,

25   if other individuals have information that one deponent does

1    not, they need to offer up or tell the requesting party

2    that, so a decision can be made.  And they have not done

3    that.  It is clear from the record that Officer Battle could

4    not answer those questions, yet they take the position that

5    she is competent.  And that flies in the face of the facts

6    listed in my motion and hearing brief.

7           And at this point, I'm not arguing for sanctions.

8    I just want to get this done.

9           THE MAGISTRATE JUDGE:  Very well.  Thank you,

10   Mr. McIntosh.

11          Ms. Connolly?

12          MS. CONNOLLY:  Yes.  If I can just have the

13   Court's indulgence for one moment.

14          Your Honor, I will be brief.  Plaintiff's counsel,

15   Mr. McIntosh, just stood up here and he summarized what he

16   put in the 30(b)(6), but I think it's important to read the

17   exact language because I don't see any language leading up

18   to the accident or total knowledge.  What I see is,

19   "Matters relating to their investigation of a stolen Jaguar

20   automobile involved in an accident with Plaintiff,

21   referenced in the District of Columbia Metropolitan PD-10."

22   The best person to talk about the PD-10, we produced: the

23   person who wrote the PD-10.

24          And just so there's no confusion, there were no

25   officers at the scene that we decided not to use.  There was

1    no one at the scene of this crash.  Officer Battle showed

2    up, did the PD-10, looked at the vehicles, did the

3    investigation regarding the PD-10, and then the car was

4    towed.  Okay?

5              THE MAGISTRATE JUDGE:  But you agree that the

6    notice of deposition is not confined to the contents of the

7    PD-10, don't you?

8              MS. CONNOLLY:  I absolutely agree, but I think

9    that the serving party -- the receiving party of the

10   30(b)(6) has to look at the 30(b)(6) and then they are

11   confined to the scope of the 30(b)(6).

12             I think what Plaintiff's counsel articulated is

13   everything that happened -- for example, if there were two

14   officers in the cruiser and there was no mention of a

15   pursuit whatsoever, I have Officer Battle's deposition, she

16   did testify and answer questions as to the cruiser.  She

17   testified looking at the chronology, the sequence of events.

18   So I don't see, on page 4, that she had no information

19   whatsoever regarding the cruiser.  She didn't show up at

20   this deposition and say, "I know nothing."  Page 4, we

21   agree --

22             THE MAGISTRATE JUDGE:  Did she answer the

23   questions?

24             MS. CONNOLLY:  We believe, in our opinion, she

25   did, and competently.  There was no -- sorry.

1          THE MAGISTRATE JUDGE:  What do you mean by

2     "in your opinion"?  Did she answer the questions or not?

3          MS. CONNOLLY:  Yes.  I believe that she answered

4     the questions.  I think we're talking about hypotheticals.

5     Question 1 on page 4, "Tell us how the Jaguar was stolen."

6          Answer, "I don't exactly know how the Jaguar was

7     stolen."

8          We agree, Your Honor, we agree.  It came out of

9     Manassas, Virginia, into the District, and there was an

10    accident.  I can't produce another witness who can tell you

11    how this vehicle was stolen.  That's one part.

12         THE MAGISTRATE JUDGE:  Do you agree that the

13    answer to that question does not include any representation

14    or any testimony regarding what the District of Columbia

15    knows about the investigation?

16         MS. CONNOLLY:  I didn't read the whole answer,

17    Your Honor.  It goes on to say, "But according to this event

18    chronology report, it states that the ORI, which is the

19    originating agency in reference to the stolen vehicle, is

20    Manassas Police Department.  They have it listed as a stolen

21    vehicle on 4/27 from Manassas, Virginia."

22         THE MAGISTRATE JUDGE:  How is that a complete

23    answer to the question?  When I say a complete answer, I

24    mean one which includes the full extent of the knowledge of

25    the District of Columbia, rather than the extent of the

1    knowledge of Officer Battle?

2           MS. CONNOLLY:  I believe it's a complete answer

3    because, one, she says, "I don't know how the vehicle was

4    stolen, but let's look at the event chronology."  And as a

5    30(b)(6) person, you don't have to produce every person that

6    has exact personal knowledge.  They can go back and look at

7    the reports, which is exactly what she did.  And she says,

8    "It came out of Manassas, Virginia."

9           Not only do we do that, we send Plaintiff's

10   counsel a letter memorializing -- and that's Exhibit 1, we

11   attach it to our opposition -- and it clearly states, and I

12   think that's what's so troublesome, is that we write to

13   Plaintiff's counsel on October 9th, saying we disagree that

14   she was not a competent person, and then we state, "She had

15   firsthand knowledge --" this is in our opposition.  I can

16   hand the Court an extra copy.

17          THE MAGISTRATE JUDGE:  I have it.  I have it,

18   Ms. Connolly.

19          MS. CONNOLLY:  Okay.  So we look at the rule,

20   which is 30(b)(6), we say she's competent, and then we list

21   specific reasons.  She had firsthand knowledge of the

22   accident, she completed the PD-10, she testified she was at

23   the accident scene.  She testified that the stolen Jaguar

24   was towed to Han's Towing, she testified that Mary Turner

25   was MPD's Crime Scene Search unit, and Officer Rachlin did

1   the follow-up investigation.  And she reviewed the evidence

2   that was produced as a result of that.  There were two

3   documents, and she reviewed them at the deposition.

4         And I think we've articulated that we had a

5   30(b)(6) notice, we complied with it within two months.

6   Plaintiff makes a big deal that he made 34 phone calls, but

7   within two months, that's very reasonable.  And the cases

8   that were cited to for sanctions -- but I guess that's not

9   what he's looking for now so I won't waste the Court's time.

10         In summation, I ask the Court to consider the fact

11   that the non-party -- we are a non-party, and we cite to the

12   fact that as a non-party we shouldn't have the same

13   requirements as a party.  We have done everything, since

14   December 11th, to try to resolve this matter.

15         THE MAGISTRATE JUDGE:  You don't suggest that

16   there are different rules governing a 30(b)(6) deposition

17   dependent upon whether the entity that receives a notice is

18   a party or a non-party, do you?

19         MS. CONNOLLY:  I'll refer the Court to my argument

20   on page 2 of my opposition, the Federal Rules of Procedures

21   26(b)(2) permits a Court to limit discovery that is

22   burdensome if the non-party status is one of the factors the

23   Court uses in weighing the burden of imposing discovery.  So

24   I just use that as an analogy that I think it would be --

25   it's beyond the scope of a 30(b)(6) to require us to produce

1   three people to be deposed, and it's definitely, in the

2   alternative, burdensome.  We are not a party and it is very

3   clear their intention is to try to add the District of

4   Columbia as a defendant.  If that's their intention, add the

5   District of Columbia as a defendant and do it properly.  You

6   can't fish for defendants by doing 30(b)(6).

7          And I again tell the Court we've done everything

8   we possibly could to try to resolve this matter, and it's

9   been since December 11th, 2007, and Plaintiff's counsel

10  tells me yesterday, in a phone message, that now he wishes

11  to depose three people.  On that day I agreed to one person.

12  On January in my e-mail I again say, "Pursuant to our

13  conversation, we will produce one person."  And it's unfair

14  for this Court to place any type of burden on the non-party

15  without clear references to questions she couldn't answer

16  and failure to comply with 30(b)(6).

17         And I think the Court for their time.

18         THE MAGISTRATE JUDGE:  Thank you, Ms. Connolly.

19         MR. McINTOSH:  Officer Battle testified that she

20  was not at the scene of the accident.  She identified in her

21  deposition a car which was following or pursuing this

22  vehicle.  She told me that Officer Rachlin would have more

23  information.

24         My client has the right, under Rule 30(b)(6) and

25  the applicable case law, to pursue that information, because

1   certainly she has identified other people in the police
2   department who have information about the accident and the
3   theft that she does not.  And that's all I wish to do.
4       THE MAGISTRATE JUDGE:  Very well.  Thank you,
5   Mr. McIntosh.
6       The Court has carefully considered the arguments
7   of counsel and reviewed your written submissions and,
8   having done so, will grant the motion which bears Document
9   Number 14, the Plaintiff's Motion to Compel.  We will call
10  it "Document Number 14, Part 1," since Plaintiff's counsel
11  has withdrawn the third request; that is, the request for
12  sanctions, and the Court has no basis upon which to find the
13  Metropolitan Police Department in contempt, based upon this
14  record.  So accordingly, the second and the third parts of
15  Document 14 are moot.
16      The Court will order that by no later than
17  March 12 -- in other words, two weeks from today -- the
18  District of Columbia produce a designee who is able or
19  designees who are able to answer all of the questions within
20  the scope of the topics included on the notice.  One
21  alternative, it appears, based upon the person who was
22  previously given the title designee, is that Officer Rachlin
23  might be produced.  The Court does not intend to order that,
24  because the Court does not believe it has discretion to do
25  so.  It appears, however, that since the designee seems to

1    believe that Officer Rachlin has further knowledge with

2    regard to the topics, that that would be a reasonable

3    choice.

4    The District will be required, as are all entities

5    receiving a 30(b)(6) notice, to ensure that whoever is

6    presented has the ability to testify not only with respect

7    to that individual's personal knowledge or indeed the

8    personal knowledge of one or two other officers, but the

9    knowledge of the District of Columbia, which is the

10   applicable requirement.

11   I should have, of course, said Metropolitan Police

12   Department and not District of Columbia.  It is with respect

13   to the knowledge of the District of Columbia that the

14   deponent must testify.  That means, of course, that a

15   deponent's answer that "I don't know what happened" does not

16   satisfy the requirements of Rule 30(b)(6).  Whether one

17   person must be prepared or more than one person must be

18   prepared the Court will leave, at least in the first

19   instance, to the determination of the Metropolitan Police

20   Department.

21   Now, is there anything further in this matter this

22   afternoon?  Mr. McIntosh?

23   MR. McINTOSH:  Not at this time, Your Honor.

24   THE MAGISTRATE JUDGE:  Ms. Connolly?

25   MS. CONNOLLY:  No, Your Honor.

1          THE MAGISTRATE JUDGE:  Very well.  Thank you very

2     much.  You may all be excused.

3          MR. McINTOSH:  Thank you, Your Honor.

4          THE MAGISTRATE JUDGE:  Thank you.

5          (Whereupon, the proceedings were concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES OF AMERICA )
                         )    Civil Action No. 07-0883
DISTRICT OF COLUMBIA     )

          I, PAUL R. CUTLER, do hereby certify that a
recording of the foregoing proceedings in the above matter
was duplicated from an original recording by the Office of
the Clerk, United States District Court for the District
of Columbia, and that said duplicate recording of the
proceedings was transcribed under my direction to
typewritten form.

_____
            PAUL R. CUTLER

          I do hereby certify that the foregoing transcript
was typed by me and that said transcript is a true record of
the recorded proceedings to the best of my ability.


_____
              BONNIE FURLONG